Belknap
No. 93-751

JO-ANN TEBBETTS, ADMINISTRATRIX OF THE ESTATE OF
REBECCA ANNE TEBBETTS

v.

FORD MOTOR COMPANY & a.

September 19, 1995

*McKean, Mattson & Latici, P.A.*, of Gilford (*Edgar D. McKean, III* on the brief), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Marc R. Scheer* on the brief), and *Parcel, Mauro, Hultin & Spaanstra*, of Denver, Colorado (*Malcolm E. Wheeler* on the brief and orally), for the defendants.

*Steven Eric Feld*, of Portsmouth (*Mr. Feld* on the brief), *Coben & Ryan*, of Scottsdale, Arizona (*Larry Coben* on the brief), and *Trial Lawyers for Public Justice*, of Washington, D.C. (*Arthur H. Bryant* on the brief and orally), for Trial Lawyers for Public Justice, as amicus curiae.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Marc R. Scheer* on the brief), and *McCutchen, Doyle, Brown & Enersen*, of San Francisco, California (*David M. Heilbron* on the brief), for the Product Liability Advisory Council, as amicus curiae.

BATCHELDER, J. On May 15, 1991, Rebecca Anne Tebbetts was fatally injured in an automobile accident in Holderness. The plaintiff, Jo-Ann Tebbetts, administratrix of her daughter's estate, sued the defendants, Ford Motor Company and Robert H. Irwin Motors, Inc. (collectively Ford), alleging that the 1988 Ford Escort Rebecca was driving was defectively designed because it did not contain an airbag on the driver's side. Ford moved for summary judgment on the ground that the plaintiff's "no airbag" theory violated the supremacy clause of the United States Constitution, U.S. CONST. art. VI, cl. 2, and was preempted by the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1431 (1988) (the Safety Act), and by Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1987) (Standard 208). The Superior Court (*O'Neil*, J.) granted Ford's motion, ruling that the plaintiff's claim was impliedly preempted. We reverse and remand.

In response to escalating injuries and deaths from traffic accidents, Congress passed the Safety Act in 1966. *See State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 477 (D.C. Cir. 1986), *cert. denied*, 480 U.S. 951 (1987). The Safety Act empowered the Secretary of Transportation to "establish . . . appropriate Federal motor vehicle safety standards," 15 U.S.C. § 1392(a), defined as "minimum stan-

dard[s] for motor vehicle performance, or motor vehicle equipment performance," 15 U.S.C. § 1391(2). Consequently, the secretary promulgated Standard 208 to "reduce the number of deaths of vehicle occupants, and the severity of injuries, . . . by specifying equipment requirements for active and passive restraint systems." 49 C.F.R. § 571.208. One method for meeting Standard 208's safety requirements for the 1988 model year was motorized automatic shoulder belts and manual lap belts, the option chosen for the Ford Escort Rebecca was driving.

The supremacy clause of article VI of the United States Constitution empowers Congress to preempt state law. Nevertheless, where the States have traditionally occupied a field, we must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

> [I]t is necessary to bear in mind . . . the circumspect view courts must take of a claim that Congress has preempted states from exercising their traditional police powers on behalf of their citizens. The provision of tort remedies to compensate for personal injuries is a subject matter of the kind the Court has traditionally regarded as properly within the scope of state superintendence.

*Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1542 (D.C. Cir.), *cert. denied*, 469 U.S. 1062 (1984) (quotation and brackets omitted).
Two provisions of the Safety Act are pertinent to our inquiry:

> Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

15 U.S.C. § 1392(d) (the preemption clause). Additionally, section 1397(k) (the saving clause) provides, "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." The issue before us is whether these provisions preempt the plaintiff's common law action.
State law is preempted by Federal law in three circumstances:

First, Congress can define explicitly the extent to which its enactments pre-empt state law. . . .

Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it . . . .

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements . . . .

*English v. General Electric Co.*, 496 U.S. 72, 78–79 (1990) (quotation and ellipsis omitted).

The United States Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 112 S. Ct. 2608 (1992), clarified preemption analysis where a statute expressly addresses that issue.

When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation.

*Id.* at 2618 (quotations and citation omitted). Although *"Cipollone* supports an inference that an express pre-emption clause forecloses implied pre-emption[,] it does not establish a rule." *Freightliner Corp. v. Myrick*, 115 S. Ct. 1483, 1488 (1995).

We first analyze the extent to which state law is explicitly preempted. *See English*, 496 U.S. at 78. The preemption clause prohibits a State from establishing a safety standard "which is not identical to the Federal standard." 15 U.S.C. § 1392(d). "A rule of the common law which permits the recovery of monetary damages for its breach self-evidently sets a standard and has been held to be a form of state regulation subject to the supremacy clause." *Cox v. Baltimore County*, 646 F. Supp. 761, 763 (D. Md. 1986). Although the language of the preemption clause alone might suggest that common law actions are preempted, we do not interpret the preemption clause in isolation. Rather we read the Safety Act as a whole, because "the meaning of statutory language, plain or not, depends on context." *Conroy v. Aniskoff*, 113 S. Ct. 1562, 1565 (1993)

(quotation omitted). Hence we must interpret the preemption clause in tandem with the saving clause.

■ The saving clause provides that "[c]ompliance with *any* Federal motor vehicle safety standard . . . does not exempt any person from *any* liability under common law." 15 U.S.C. § 1397(k) (emphasis added). "It is difficult to imagine broader language." *United States v. James*, 478 U.S. 597, 604 (1986). We therefore conclude that state common law is not explicitly preempted.

We next determine whether the Safety Act or its history "provides a reliable indicium of congressional intent with respect to state authority." *Cipollone*, 112 S. Ct. at 2618 (quotation omitted). "In determining whether a state cause of action is preempted by federal law, our sole task is to ascertain the intent of Congress." *Gingold v. Audi-NSU-Auto Union, A.G.*, 567 A.2d 312, 318 (Pa. Super. 1989) (quotation omitted).

Although the original Senate version of the proposed Safety Act contained no saving clause, the committee report noted that compliance with federal standards would not preempt common law claims: "[T]he Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law." S. REP. NO. 1301, 89th Cong., 2d Sess. 12 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2709, 2720. The bill's sponsor, Senator Warren Magnuson, commented: "Compliance with Federal standards would not necessarily shield any person from broad liability at the common law. The common law on product liability still remains as it was." 112 CONG. REC. 14230 (1966).

An examination of the House committee report is equally instructive. By inserting the saving clause, the committee "intended . . . that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law particularly those relating to warranty, contract, and tort liability." H.R. REP. NO. 1776, 89th Cong., 2d Sess. 24 (1966).

■ We therefore determine that Congress intended the Safety Act to be "supplementary of and in addition to the common law of negligence and product liability." *Larsen v. General Motors Corp.*, 391 F.2d 495, 506 (8th Cir. 1968). Having determined that the preemption clause when read in tandem with the saving clause "provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone*, 112 S. Ct. at 2618 (citation and quotation omitted).

Because we must construe the preemption clause narrowly in light of the presumption against the preemption of state police power regulations, *CSX Transp., Inc. v. Easterwood*, 113 S. Ct. 1732, 1737 (1993), and given the express utilization of the term "common law" in the saving clause, we agree with the analysis of those courts that have held that actions such as this are not preempted. *See, e.g., Gingold*, 567 A.2d at 330.

■ Ford argues that the majority of courts faced with a similar preemption inquiry have held common law actions preempted. *E.g., Wood v. General Motors Corp.*, 865 F.2d 395, 407–14 (1st Cir. 1988), *cert. denied*, 494 U.S. 1065 (1990). Had the United States Supreme Court not clarified preemption analysis in *Cipollone* subsequent to *Wood*, Ford's argument would be more persuasive. *See* Chadwell, *Automobile Passive Restraint Claims Post-Cipollone: An End to the Federal Preemption Defense*, 46 BAYLOR L. REV. 141 (1994). As the plaintiff notes, however, "[w]hile it remains to be seen whether a jury in this case will find that Ford acted unreasonably, notwithstanding its alleged compliance with [Standard] 208, the issue before this court at this time is whether the plaintiff has the right to ask the jury to decide." We hold that on these issues she does. *See* RESTATEMENT (SECOND) OF TORTS § 288C (1965) ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions."); W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 233 (5th ed. 1984) ("While compliance with a statutory standard is evidence of due care, it is not conclusive on the issue."). Accordingly, we reverse and remand.

*Reversed and remanded.*

All concurred.