706 A.2d 806

Daniel CELLUCCI, Appellant,

v.

GENERAL MOTORS CORPORATION, Appellee.

Susan C. MUNTZ and Frederick F. Muntz, Appellees,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, William H. Williams, Paul D. Williams, Volvo AB SWE, Volvo North American Corp., Jim Wynn Volkswagen–Volvo, Andrew Kositsky, Michael Earl Eidle, and Laura Ann Semmelroth, Appellants.

Appeal of VOLVO NORTH AMERICA CORP., AB Volvo and Jim Wynn Volkswagen–Volvo.

Supreme Court of Pennsylvania.

Argued April 28, 1997.

Decided Jan. 2, 1998.

408

Larry E. Coben, Donald E. Matusow, Philadelphia, for Daniel Celucci.

Arthur H. Bryant, Philadelphia, for Amici Trial Laws.–Auto Safety.

Terry S. Hyman, Harrisburg, for Amicus Pa. Trial Lawyers Assoc.

Susan E. Satkowski, Philadelphia, for General Motors Corporation and David Heilbron.

Kenneth S. Geller, William J. Conroy, Philadelphia, Lily F. Swenson, for Product Liability Advisory Council, Inc.

Dawn Riley Courtney, Philadelphia, for Joseph DeFalco.

James L. Griffith, Virginia Lynn Hogban, and Brett L. Messinger Philadelphia, for Volvo N.A., J. Wynn, and AB Volvo.

David L. Grove, Peter Breslauer, Philadelphia, for Susan and Frederick Muntz.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

CASTILLE, Justice.

The sole issue on appeal in these two matters is whether the National Traffic and Motor Vehicle Safety Act of 1996, 15 U.S.C. § 1381, *et seq.* (recodified at 49 U.S.C. §§ 30101–33118) ("the Safety Act"), preempts state causes of action sounding in

tort based upon a manufacturer's failure to equip a vehicle with air bags for occupant crash protection. Because we find that the Safety Act impliedly preempts such state actions sounding in tort, we affirm the order of the Superior Court in *Cellucci* and reverse the order of the Commonwealth Court in *Muntz.*

The relevant facts pertaining to the Cellucci matter are that Daniel Cellucci suffered serious brain injuries when the 1986 Chevrolet Cavalier in which he was a passenger went off the road and collided with a tree. The Cavalier was equipped with three-point lap and shoulder harness safety belts, and a dashboard warning light and buzzer which were designed to promote occupant use of manufacture installed seat belts.

Cellucci brought an action against the manufacturer of the vehicle, General Motors Corporation ("GM"), claiming that he was wearing his seat belt at the time of the accident but that the Cavalier was defectively designed because air bags were not installed in it. In response, GM filed a motion for partial summary judgment contending that federal law preempts Cellucci's claim that the vehicle was defective because it did not have air bags. On August 19, 1995, the trial court denied GM's motion. GM appealed to the Superior Court. On April 30, 1996, the *en banc* Superior Court,[1] in a published opinion, reversed the trial court and held that the Safety Act impliedly preempted Cellucci's air bag claim. We granted Cellucci's petition for allowance of appeal.

The relevant facts surrounding the Muntz matter are that on December 17, 1988, Susan Muntz was driving a 1985 Volvo 240 station wagon when a truck struck her vehicle head-on and caused her to suffer serious and permanent injuries. The Volvo was equipped with a three-point manual lap and shoulder harness safety belt and a dash board warning light designed to encourage occupant use of seat belts. On October

---

1. Judge Beck authored the majority opinion and was joined by Judges Cavanaugh, Cirillo, Tamilia and Hoffman. Judge Cirillo filed a concurring opinion which was joined by Judges Cavanaugh and Hoffman. Judge Del Sole filed a dissenting opinion which was joined by Judges McEwen and Johnson.

1, 1991, Susan and Frederick Muntz brought an action under theories of negligence, strict liability, breach of implied warranties and loss of consortium claiming that Volvo failed to design, manufacture and sell a vehicle which contained an effective and safe passive restraint system, such as a driver's side air bag, a knee bolster, a safety belt pretension system and a safety belt tensioner. Volvo North America Corporation, AB Volvo, and Jim Wynn Volkswagen–Volvo (collectively "Volvo") filed answers to the complaint and new matter in which they asserted that the regulations promulgated under the Safety Act preempt the Muntzes' claims.

On April 28, 1993, Volvo filed a motion for summary judgment claiming that the Muntzes' claims were preempted by the Safety Act on the basis that the safety system that Volvo used in their vehicles met the applicable federal regulations promulgated under the Safety Act. On April 15, 1994, the trial court granted Volvo's motion for summary judgment, finding that the federal standards set by the Safety Act preempted the Muntzes' causes of action. The Muntzes appealed to the Commonwealth Court which quashed the appeal as interlocutory.[2] On August 19, 1994, the Muntzes applied to the trial court for certification of the April 15, 1994 order as a final order. On December 5, 1994, the trial court granted the Muntzes' application for certification. The Muntzes once again appealed to the Commonwealth Court. On March 1, 1996, the Commonwealth Court, in a published opinion, reversed the trial court and held that the Safety Act did not preempt the Muntzes' state common law tort claims. We granted Volvo's petition for allowance of appeal and consolidated it with Cellucci in order to resolve the split between the two intermediate appellate courts of the Commonwealth over whether the Safety Act preempted the common law tort claims raised in these cases.

2. Since the Commonwealth of Pennsylvania, Department of Transportation was named as a defendant in this matter, an appeal from the trial court's decision was properly within the jurisdiction of the Commonwealth Court. See 42 Pa.C.S. § 762.

The United States Congress enacted the Safety Act in order "to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents." 49 U.S.C. § 30101 (previously codified at 15 U.S.C. § 1381 (1988)). The preemption clause of the Safety Act provides that:

> Preemption.—(1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter. However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter.

> (2) A State may enforce a standard that is identical to a standard prescribed under this chapter.

49 U.S.C.A. § 30103(b). However, the Safety Act also provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C.A. § 30103(e).

Pursuant to the powers which are authorized under the Safety Act, the Secretary of Transportation promulgated three safety options for occupant crash protection of passenger vehicles at Federal Motor Vehicle Safety Standard 208 ("FMVSS 208"). For cars manufactured in 1985 and 1986, such as the vehicles at issue, Standard 208 provided that a manufacturer had the option for occupant restraint systems to equip the vehicle with (1) a complete passive restraint system for front and lateral crashes, (2) passive restraints for frontal crashes plus lap belts, shoulder harnesses and a warning system, or (3) a three-point manual seat belt with a warning system. 49 C.F.R. §§ 571.208 § 4.1.2.1, § 4.1.2.2, and § 4.1.2.3. Both of the vehicles at issue in this appeal had three-point manual seatbelts and a warning system installed.

GM and Volvo argue that since they complied with one of the three safety options promulgated pursuant to the Safety Act, the common law tort claims raised by Cellucci and the Muntzes related to the failure of their cars to have air bags or other type of passive restraint systems (collectively, "no air bag" claims) are preempted by the Safety Act. Conversely, Cellucci and the Muntzes argue that Congress never intended for the Safety Act to preempt such claims. This Court's resolution of this dispute depends on an analysis of federal preemption law.

■ The United States Supreme Court, discussing federal preemption, has stated that:

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Thus, since our decision in *McCulloch v. Maryland,* 4 Wheat. 316, 427, 4 L.Ed. 579 (1819), it has been settled that state law that conflicts with federal law is "without effect." Consideration of issues arising under the Supremacy Clause "start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." Accordingly, " '[t]he purpose of Congress is the ultimate touchstone' " [sic] of preemption analysis.

*Cipollone v. Liggett Group,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (citations omitted). Furthermore, Congress' intent may be found in federal regulations that are duly enacted pursuant to delegation of congressional authority. *Hillsborough County v. Automated Medical Laboratories,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). The United States Supreme Court has held that federal preemption of state law can occur (1) where Congress explicitly preempts a state law, (2) where a state law actually conflicts with federal law, and (3) where Congress has implicitly indicated an intent to occupy a given field to the exclusion of state law. *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 299–300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988).

Since Section 30103(e) of the Safety Act, which states that it does not exempt a party from liability at common law, shows that Congress did not implicitly intend to occupy the entire field of automobile safety to the exclusion of state law, this Court must determine if Congress, in enacting the Safety Act, intended to explicitly or impliedly preempt the state common law tort claims raised by Cellucci and the Muntzes.

■ The first line of analysis this Court will undertake is whether the Safety Act explicitly preempts the "no air bag" claims at issue. In deciding this issue, this Court is guided by the principle of statutory analysis that courts have a duty to give effect to every provision in a statute when possible. *American Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981). Here, Congress did not make explicit reference to state common law tort actions in the express preemption provision of Section 30103(b) of the Safety Act. However, Congress, in Section 30103(e), enacted a separate provision in the Safety Act authorizing common law liability. Therefore, when sections 30103(b) and (e) are read together, this Court finds that the intent of Congress is too ambiguous to conclude that common law actions such as the ones raised in these two matters were intended to be explicitly preempted. Accordingly, this Court holds that the Safety Act does not explicitly preempt common law actions concerning GM and Volvo's failure to install air bags or other passive restraint systems.

■ Since we concluded that the Safety Act does not explicitly preempt the state common law tort claims at issue, this Court must determine if Congress intended to impliedly preempt such claims. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995) (the existence of an express preemption clause does not preclude an implied preemption analysis, even though it may support the inference that no implied preemption exists). As noted above, Congress may have impliedly intended to preempt state common law actions where the state law conflicts with federal law. "A conflict will be found 'when it is impossible to comply with both state and federal law, or where the state law

stands as an obstacle to the accomplishment of the full purposes and objectives of Congress.'" *Id.* at 300, 108 S.Ct. at 1150 (citation omitted). The United States Supreme Court has interpreted "stands as an obstacle" to mean that: "[a] state law also is preempted if it interferes with the methods by which the federal statute was designed to reach this goal." *International Paper Co. v. Ouellette,* 479 U.S. 481, 494, 107 S.Ct. 805, 813, 93 L.Ed.2d 883 (1987) (citation omitted). Thus, the seminal question is whether the state common law tort claims raised here conflict with the methods formulated under the Safety Act to achieve the goal of reducing deaths and injuries to people arising from traffic accidents.

 Here, Cellucci and the Muntzes first assert that no conflict exists between the Safety Act and their state common law tort claims because such claims do not interfere with the three passive restraint options promulgated by the Secretary of Transportation pursuant to the Safety Act in order to achieve the stated purpose of the Safety Act: to reduce deaths and injuries arising from traffic accidents. As the United States Court of Appeals for the Ninth Circuit has stated:

the Safety Act does not mandate safety standards at any cost, but only those safety standards determined by the Secretary of Transportation to be "reasonable, practicable and appropriate." 15 U.S.C. § 1392(f)(3). Pursuant to Congress' direction, the Secretary considered and rejected a safety standard requiring airbags. In doing so, the Secretary considered, *inter alia,* the increased safety achieved by airbags as well as their cost. As members of the judiciary, we are not in a position to second-guess the Secretary's decision.

*Harris v. Ford Motor Co.,* 110 F.3d at 1412 n. 3. Moreover, the United States Senate published a report on the National Traffic and Motor Vehicle Safety Act in which it stated that "[t]he centralized, mass production, high-volume character of the motor vehicle manufacturing industry in the United States requires that motor vehicle safety standards be not only strong and adequately enforced, but that they be *uniform* throughout the country." S.Rep. No. 1301, 89th Cong., 2d

Sess., *reprinted in* 1966 U.S.C.C.A.N. 2709, 2720 (emphasis added). Thus, since Congress gave manufacturers three passive restraint options to choose from and indicated that such options must be uniform throughout the country, any state liability claim that deviates from allowing a manufacturer to use any of the three options that Congress allowed conflicts with the Safety Act and the regulations promulgated under it. *See Freightliner Corp.*, 514 U.S. at 288, 115 S.Ct. at 1488 (finding petitioner's implied pre-emption argument did not undermine any federal objectives or purposes with respect to ABS devices because neither the Safety Act nor any regulations currently regulate the use of ABS devices, and because there was an absence of a promulgated safety standard for ABS devices).

Cellucci and the Muntzes argue that the state common law tort claims at issue do not impose any burden on the manufacturers which are additional to that of the Safety Act. However, to argue that no conflict exists between allowing common law liability for "no air bag" claims and the Safety Act fails. To assert that the common law does not compel manufacturers to install certain types of passive restraints disregards the reality of the situation since "an automobile manufacturer faced with the prospect of choosing the [passive restraint options], or facing potential exposure to compensatory and punitive damages for failing to do so, has but one realistic choice." *Kolbeck v. General Motors Corp.*, 702 F.Supp. 532, 541 (E.D.Pa.1988). Moreover, the United States Court of Appeals for the Third Circuit has stated:

That such flexibility and choice is an essential element of the regulatory framework established in Standard 208 has repeatedly been made clear in the regulatory history of this particular safety standard. *See, e.g.*, 49 Fed.Reg. 28962, 28997 (1994) (Secretary Dole explained that the flexibility and variety built into Standard 208 was needed to "provide sufficient latitude for industry to develop the most effective [occupant restraint] systems" and to help "overcome any concerns about public acceptability by permitting some public choice"); 46 Fed.Reg. 53419 (1981) (Secretary Lewis

determined that air bags and automatic seat belts should not be required, but each should remain only one alternative among several options in satisfying occupant restraint requirements); 42 Fed.Reg. 5071 (1977) (Secretary Coleman relied on a 1976 document entitled "The Secretary's Decision Concerning Motor Vehicle Occupant Crash Protection" to conclude that passive restraint systems should not be mandated at the time due to public uncertainty).

*Pokorny v. Ford Motor Company,* 902 F.2d 1116, 1124 (3d Cir.), *cert. denied,* 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990). Thus, this Court finds that to allow common law liability where, as here, the underlying claims are that either an air bag or a different passive restraint system should have been installed "frustrates the goals of the federal regulatory framework and undermines the flexibility that Congress and the Department of Transportation intended to give to automobile manufacturers in this area." *Pokorny,* 902 F.2d at 1123. Thus, common law tort liability will only survive the Safety Act as long as the claim does not frustrate the manufacturer's ability to comply with the regulations promulgated pursuant to the Safety Act.

Even if their state common law tort claims interfere with compliance with the Safety Act, Cellucci and the Muntzes argue in the alternative that no implied preemption can exist because the Safety Act specifically preserves state common law action in Section 30103(b). However, as aptly noted by the Superior Court in *Cellucci:*

> Section 30103(e) "c[ould] not properly be read to preserve common law actions [ ] that would subvert a federal statutory or regulatory scheme" by "remov[ing] the element of choice [not to install airbags] explicitly provided in Safety Standard 208." *Cellucci v. General Motors Corp.,* 450 Pa.Super. 438, 450–51, 676 A.2d 253, 260 (1996).

*Cellucci v. General Motors Corp.,* 450 Pa.Super. 438, 450–51, 676 A.2d 253, 260 (1996). Moreover, as the Third Circuit has ruled, "the better approach is to construe [§ 30103(e) ] to permit only those common law actions for design defect that

do not frustrate or undermine the Safety Act's regulatory framework." *Pokorny,* 902 F.2d at 1125 n. 10.

■ Based on the above, this Court concludes that common law liability will survive federal regulations which are promulgated pursuant to the Safety Act only so long as the basis under which the common law liability is claimed does not prevent a manufacturer from complying with the federal regulation in a manner of its choosing (i.e., by selecting one of three options). *See Pokorny,* 902 F.2d at 1120–21 (discussing express preemption for "no air bag" claims under the Safety Act). To hold otherwise would place manufacturers "in a position where they could be subject to varying standards from state to state, which could not all be complied with simultaneously." *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 298 (7th Cir.1997).

■ Here, the Muntzes and Cellucci raised "no air bag" claims. The regulations promulgated under the Safety Act specifically give automobile manufacturers the option to use the three-point lap and shoulder harness safety belts, and a dashboard light and buzzer which was designed to promote the use of seat belts. Allowing a state common law standard that imposes liability on a manufacturer for choosing a federally-imposed option takes away that federally-imposed option from the manufacturer, which clearly goes against Congress' intent. Thus, common law liability which arises from the failure of a manufacturer to install air bags or other passive restraint systems is in actual conflict with the federal law and regulations which allowed the manufacturers to choose among three options.[3] Accordingly, the "no air bag" claims of Celluc-

---

3. This Court addressed the issue of preemption with regard to the Medical Device Amendments to Federal Food, Drug, and Cosmetic Act ("MDA"), 21 U.S.C.A. § 301 *et seq.* in *Green v. Dolsky,* 546 Pa. 400, 685 A.2d 110 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1432, 137 L.Ed.2d 540 (1997). The MDA's preemption clause, which is essentially similar to the Safety Act's preemption clause, provided, in pertinent part, that:

[N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement (1) which is different from, or in addition to, any requirement applicable under this Act to the device and (2) which relates to the safety or effectiveness of the device or to any other

ci and the Muntzes are impliedly preempted.[4]

> matter included in a requirement applicable to the device under this Act.

21 U.S.C.A. § 360k(a). Furthermore, like the Safety Act, the MDA has a savings clause that provides, in pertinent part, that: "[c]ompliance with an order [under the MDA] shall not relieve any person from liability under Federal or State law." See 21 U.S.C. § 360h(d). In Green, this Court held that:

> [An appellant's] strict liability claim is precluded by [21 U.S.C.A.] § 360k. The essence of the strict liability claim is that the manufacturer placed a dangerous and defective device into commerce, the product was administered in unchanged condition, and the product caused the injury alleged. However, the product was approved for sale after undergoing the premarket approval process. In other words, the FDA determined that the product was neither dangerous nor defective. To allow a strict liability claim for a product specifically approved by the FDA would be to impose "requirements" which are different from those of the FDA and which affect the safety of the device, in violation of § 360k.

Id. at 415, 685 A.2d at 118. Therefore, this Court's decision in this matter is consistent with its holding in Green. Moreover, finding implied preemption for "no air bag" claims is in accordance with the United States Supreme Court's interpretation of similar provisions since the United States Supreme Court has ruled that clauses similar to § 30103(e) do not preserve from preemption non-identical or conflicting state common law actions. See Morales v. Trans World Airlines, 504 U.S. 374, 384–85, 112 S.Ct. 2031, 2037–38, 119 L.Ed.2d 157 (1992); International Paper Co. v. Ouellette, 479 U.S. at 493–94, 107 S.Ct. at 812–13.

**4.** This holding that "no air bag" claims are implicitly preempted is in line with the majority of courts that have ruled on this issue. See Estate of Montag v. Honda Motor Co., 75 F.3d 1414 (10th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 61, 136 L.Ed.2d 24 (1996); Pokorny v. Ford Motor Co., 902 F.2d 1116 (3d Cir.), cert. denied, 498 U.S. 853, 111 S.Ct. 147, 112 L.Ed.2d 113 (1990); Kitts v. GMC, 875 F.2d 787 (10th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); Wood v. GMC, 865 F.2d 395 (1st Cir.1988), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990); Taylor v. GMC, 875 F.2d 816 (11th Cir.1989), cert. denied, 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1990); Courtney v. Mitsubishi Motors Corp., 926 F.Supp. 223 (D.Mass.1996); Martin v. Ford Motor Co., 914 F.Supp. 1449 (S.D.Tex.1996); Waters v. Ford Motor Co., Civ. A. No. 95–3891, 1996 WL 114791, 1996 U.S. Dist. LEXIS 3050 (E.D.Pa. Mar. 13, 1996) (declining to overrule Pokorny in light of Cipollone ); Heath v. GMC, 756 F.Supp. 1144 (S.D.Ind.1991); Dallas v. GMC, 725 F.Supp. 902 (W.D.Tex.1989); Tammen v. GMC, 857 F.Supp. 788 (D.Kan.1994) (declining to overrule Kitts in light of Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)); O'Bryan v. Volkswagen of America, Inc., 838 F.Supp. 319 (W.D.Ky.1992); Weinstein v. Ford Motor Co., Civ. A. No. 4:89–2590-15, 1990 WL 85497 (D.S.C. Feb. 9, 1990); Kolbeck v. GMC, 702 F.Supp. 532 (E.D.Pa.1988); Heftel v.

*GMC,* No. Civ. A. 85-1713, 1988 WL 19615 (D.D.C. Feb. 23, 1988); *Howard v. American Motors Corp.,* No. 85-1754, 1988 WL 156134 (S.D.Texas July 26, 1988); *Hunter v. GMC,* No. H-86-546 (TEC), 1988 WL 288972 (D.Conn. Dec. 27, 1988); *Kelly v. GMC,* 705 F.Supp. 303 (W.D.La.1988); *Surles v. Ford Motor Co.,* 709 F.Supp. 732 (N.D.Tex. 1988); *Staggs v. Chrysler Corp.,* 678 F.Supp. 270 (N.D.Ga.1987); *Schick v. Chrysler Corp.,* 675 F.Supp. 1183 (D.S.D.1987); *Wattelet v. Toyota Motor Corp.,* 676 F.Supp. 1039 (D.Mont.1987); *Hughes v. Ford Motor Co.,* 677 F.Supp. 76 (D.Conn.1987); *Baird v. GMC,* 654 F.Supp. 28 (N.D.Ohio 1986); *Minton v. Honda of America Mfg., Inc.,* No. 14949, 1996 WL 402070 (Ohio Ct.App. July 19, 1996), *motion to certify allowed,* 77 Ohio St.3d 1421, 670 N.E.2d 1007, *appeal allowed,* 77 Ohio St.3d 1422, 670 N.E.2d 1008 (1996); *Cooper v. GMC,* 702 So.2d 428 (Miss.1997); *Drattel v. Toyota Motor Corp.,* No. 7897/93 (N.Y. Sup.Ct., Kings County Jan. 4, 1996); Hill v. GMC, *No. Civ. 94-AR-0088-S, A.2d (N.D.Ala. Nov. 15, 1995);* Beeman v. GMC, *No. CIV-94-1956-A, 1995 WL 813722 (W.D.Okla. Nov. 2, 1995);* Dutton v. GMC, *slip op., No. CV-94793-A (W.D.Okla. July 24, 1995);* Tietloff v. Ford Motor Co., *slip op., No. 93-079-P(R) (W.D.Ky. Aug. 3, 1995);* Marrs v. Ford Motor Co., *852 S.W.2d 570 (Tex.Ct.App.1993);* Cerniak v. Nissan Motor Corp., *No. 88 C 4815, 1991 WL 147366 (N.D.Ill. Jul. 26, 1991);* Weinstein v. Ford Motor Co., *No. 4:89-2590-15, 1990 WL 85497 (D.S.C. Feb. 9, 1990);* Purdy v. Ford Motor Co., *No. 89-30314 WEA, 1990 WL 96091 (N.D.Fla. Jan. 3, 1990);* Hunt v. Ford Motor Co., *Civ. A. No. 88-AR-1756-M, 1989 WL 308034 (N.D.Alabama Mar. 30, 1989);* Gardner v. Honda Motor Co., *145 A.D.2d 41, 536 N.Y.S.2d 303 (1988),* appeal dismissed, *74 N.Y.2d 715, 543 N.Y.S.2d 401, 541 N.E.2d 430 (1989);* Nissan Motor Corp. v. Superior Court (Meier), *212 Cal.App.3d 980, 261 Cal.Rptr. 80 (1989),* cert. denied, *494 U.S. 1066, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990);* see also Schlotz v. Hyundai Motor Co., *557 N.W.2d 613 (Minn.Ct.App.1997),* review denied, *1997 Minn. LEXIS 259 (Minn. Mar. 26, 1997),* cert. denied, —— *U.S.* ——, *118 S.Ct. 80, 139 L.Ed.2d 38 (1997) (a "no lap belt" claim was impliedly preempted because the manufacturer complied with Standard 208).*

Other courts have held that "no air bag" claims are expressly preempted. *Harris v. Ford Motor Co.,* 110 F.3d 1410 (9th Cir.1997); *Johnson v. GMC,* 889 F.Supp. 451 (W.D.Okla.1995); *Gills v. Ford Motor Co.,* 829 F.Supp. 894 (W.D.Ky.1993); *Cox v. Baltimore County,* 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.,* 632 F.Supp. 1095 (E.D.Mo.1986); *Vasquez v. Ford Motor Co.,* No. CIV 86-0657 PHX WPC, 1986 WL 18670 (D.Ariz. Nov. 18, 1986); *Martinez v. Ford Motor Co.,* 224 Mich.App. 247, 568 N.W.2d 396 (1997); *Zimmerman v. Volkswagen of America, Inc.,* 128 Idaho 851, 920 P.2d 67 (Idaho 1996); *Dykema v. Volkswagenwerk AG,* 189 Wis.2d 206, 525 N.W.2d 754 (Wis.Ct.App.1994), *cert. denied,* 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23, *reh'g denied,* 516 U.S. 1002, 116 S.Ct. 549, 133 L.Ed.2d 451 (1995); *Panarites v. Williams,* 216 A.D.2d 874, 629 N.Y.S.2d 359 (4 Dept. June 9, 1995); *Miranda v. Fridman,* 276 N.J.Super. 20, 647 A.2d 167, *cert. denied,* 138 N.J. 271, 649 A.2d 1291 (1994); *Boyle v. Chrysler Corp.,* 177 Wis.2d 207, 501 N.W.2d 865 (Wis.Ct.App.), *review denied,* 510 N.W.2d 137 (Wis.1993); *Wickstrom v. Maplewood Toyota, Inc.,* 416 N.W.2d 838 (Minn.Ct.App.1987), *cert. denied,* 487 U.S. 1236, 108 S.Ct. 2905, 101

For the foregoing reasons, the order of the Superior Court in *Cellucci* is affirmed and the order of the Commonwealth Court in *Muntz* is reversed and that matter is remanded to the Commonwealth Court for further proceedings consistent with this opinion.

L.Ed.2d 937 (1988); *see also Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291 (7th Cir.1997) (holding common law windshield installation claims are expressly preempted by the Safety Act).

However, a minority of the courts have found that air bag claims are not preempted by the Safety Act. *See Garrett v. Ford Motor Co.*, 684 F.Supp. 407 (D.Md.1987); *Munroe v. Galati (GMC)*, 189 Ariz. 113, 938 P.2d 1114, (1997); *Ketchum v. Hyundai Motor Co.*, 49 Cal.App.4th 1672, 57 Cal.Rptr.2d 595 (1996); *Hyundai Motor Co. (Korea) v. Phillip*, 639 So.2d 1064 (Fla.Dist.Ct.App.3d Dist.1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 901, 130 L.Ed.2d 785 (1995); *Tebbetts v. Ford Motor Co.*, 140 N.H. 203, 665 A.2d 345 (1995), *cert. denied*, 516 U.S. 1072, 116 S.Ct. 773, 133 L.Ed.2d 726, *reh'g denied*, 516 U.S. 1154, 116 S.Ct. 1036, 134 L.Ed.2d 112 (1996); *Nelson v. Ford Motor Co.*, 108 Ohio App.3d 158, 670 N.E.2d 307 (1995), *dismissed, discretionary appeal not allowed*, 76 Ohio St.3d 1404, 666 N.E.2d 565 (1996); *Wilson v. Pleasant*, 660 N.E.2d 327 (Ind.1995); *Loulos v. Dick Smith Ford, Inc.*, 882 S.W.2d 149 (Mo.Ct.App.1994); *see also Doyle v. Volkswagenwerk Aktiengesellschaft*, 267 Ga. 574, 481 S.E.2d 518 (1997) (holding a "no lapbelt" claim was not preempted). Despite this conflict, the United States Supreme Court has yet to grant *certiorari* on this issue.