**Christopher and Janice BARCZYNSKI, on behalf of Reginald Ray MOORE, Petitioners**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1998.

Decided April 15, 1999.

Sheila Oliver, Elkins Park, for petitioners.

Jonathan J. Houlon, Philadelphia, for respondent.

Before COLINS, President Judge, FRIEDMAN, J. (P.), and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.[1]

Christopher and Janice Barczynski (Barczynskis), on behalf of Reginald Ray Moore

1. This case was reassigned to the authoring judge on February 9, 1999.

(Reggie), appeal from an order of the Department of Public Welfare (DPW) affirming the decision of the Philadelphia Department of Human Services (DHS) to deny the Barczynskis' application for an adoption assistance subsidy under sections 771–774 of the Public Welfare Code (Code).[2] We reverse.

Reggie was born on May 26, 1989 and was committed to the care and custody of DHS. (DPW's Findings of Fact, No. 1; N.T. at 9.) DHS placed Reggie with an unidentified foster family. (DPW's Findings of Fact, No. 6; N.T. at 9.)

The original goal of DHS was to reunite Reggie with his biological mother.[3] (N.T. at 56.) However, when those efforts failed, DHS went before the court of common pleas to have its goal for Reggie changed to adoption. (N.T. at 57.) The court accepted the change, and DHS transferred Reggie's case from its Family Center unit to its adoption division for termination of parental rights. (N.T. at 57, 73.) The termination procedure involved a search for Reggie's biological father. (N.T. at 58.)

On August 6, 1989, DHS placed Reggie in the care of the Barczynskis under the supervision of Counseling and Care Services. (DPW's Findings of Fact, No. 5; N.T. at 9.) Two days after his arrival at the Barczynski's, Reggie stopped breathing and had to be hospitalized for nine days. (N.T. at 13.) When he returned to the Barczynskis' home from the hospital, Reggie was connected to an apnea monitor, for which the Barczynskis had to receive training. (N.T. at 13.) After being with the Barczynskis for approximately one month, DHS placed Reggie once again with the original foster parents. (DPW's Findings of Fact, No. 6; N.T. at 9.)

In May 1990, DHS moved Reggie back to the Barczynskis. (DPW's Findings of Fact, No. 7; N.T. at 9.) According to the Barczynskis, Reggie was in worse condition than when he left them. (N.T. at 10.) Reggie did not walk, crawl, hold a bottle or try to feed himself. (N.T. at 10.) In addition, Reggie had no muscle tone. (N.T. at 10.) The Barczynskis believed that Reggie's original foster mother "did nothing with him." (N.T. at 13.)

In August or September of 1990, while attempting to terminate parental rights, the DHS adoption division located Reggie's biological father.[4] (N.T. at 33.) He expressed an interest in caring for Reggie. (DPW's Findings of Fact, No. 10; N.T. at 58.) As a result, the DHS goal for Reggie was changed again, from adoption to reunification, and the case was transferred back to the DHS Family Center unit. (DPW's Findings of Fact, No. 10; N.T. at 58.) The efforts to reunite Reggie with his biological father did not go well. Apparently, Reggie's biological father sometimes failed to visit Reggie when visits were scheduled. (N.T. at 58.)

In the first half of 1992, Reggie's medical condition was not good. He was experiencing febrile seizures and hypergag reflex. He also had asthma, and he suffered from nosebleeds.[5] (N.T. at 12.) The Barczynskis, afraid that DHS would move Reggie from one foster home to another and concerned that Reggie needed medical supervision, began to discuss adopting Reggie with DHS during this time. (N.T. at 11, 13.)

The Barczynskis, with an attorney, went to see DHS about adopting Reggie. (N.T. at 14, 35.) However, DHS would not talk to the attorney. (N.T. at 35.) Reggie's caseworker supervisor told the attorney that "he had

---

2. Act of June 13, 1967, P.L. 31, *added by* section 1 of the Act of December 30, 1974, P.L. 1039, 62 P.S. §§ 771–774. Sections 771–774 of the Code provide for payment of an adoption assistance subsidy to eligible children. These sections comprise subdivision (e) of the Code and are commonly known as the Adoption Opportunities Act.

3. DPW found as a fact that, at the time of Reggie's birth, the goal of DHS for Reggie was adoption. (DPW's Findings of Fact, No. 9.) However, the record does not contain substantial evidence to support that finding.

4. DPW found as a fact that Reggie's biological father was located in August or September 1992. (DPW's Findings of Fact, No. 10.) However, that finding is not supported by substantial evidence in the record.

5. DPW found as a fact that Reggie suffered from these problems in May 1990. (DPW's Findings of Fact, No. 8.) However, there is not substantial evidence in the record to support that finding.

absolutely no business being there." (N.T. at 14, 35.) DHS told the Barczynskis that Reggie was not eligible for adoption because his biological father was involved in his life. (N.T. at 13, 34.) The Barczynskis decided to "just see what happened." (N.T. at 35.)

At some point, the Barczynskis and DHS discussed "legal custody" or "temporary legal custody" as an alternative to adoption. (N.T. at 58, 75.) DHS considers "temporary legal custody" to be an uncommon and *temporary* situation usually initiated by the Family Center unit when, as in this case, a biological parent is not ready to reunite with his or her child.[6] (N.T. at 70–71.) However, DHS also considers placement of a child in "legal custody" to be one of the *final* goals for a dependent child in its care and custody, like reunification and adoption. (N.T. at 71.) Thus, once that goal is achieved, DHS no longer has any contact with the dependent child.[7] (N.T. at 71.)

When foster parents take "temporary legal custody" of a dependent child, DHS assumes that the foster parents will not be adopting the child. (N.T. at 75.) Thus, DHS does not advise the foster parents that, by taking "temporary legal custody," they may forfeit an opportunity in the future to receive adoption assistance payments. (N.T. at 74.)

DHS believed that Reggie would benefit from a "temporary legal custody" arrangement because the Barczynskis would be able to make medical care decisions for Reggie without first obtaining the approvals of DHS and Reggie's biological father. (N.T. at 68.) Thus, Reggie could avoid "some of the complications that come from involvement with the whole system." (N.T. at 68.)

On September 2, 1992, the Philadelphia Court of Common Pleas issued a Dependency Review Order[8] indicating that there was an agreement between DHS, the Barczynskis and Reggie's biological father to discharge the commitment of Reggie's care to DHS.[9] The court ordered that "temporary legal custody" be transferred to the Barczynskis and that the matter be relisted "upon application."[10] (DHS Exhibit No. 1.)

The Barczynskis had no further contact with DHS or any other agency with respect to Reggie. (DPW's Findings of Fact, No. 13.) However, the Barczynskis are foster parents to another child and have adopted a set of twins. (N.T. at 38.) The Barczynskis receive foster care payments for the other child and adoption subsidy payments for the twins. (N.T. at 30, 38–39.) The Barczynskis were under the supervision of Counseling

---

6. It is difficult to understand why DHS would approve a "temporary legal custody" arrangement with foster parents when its goal for the child is reunification, not adoption. DHS admits that giving "temporary legal custody" to foster parents makes reunification with biological parents less likely. (N.T. at 72.)

7. However, we note that DHS has a statutory duty to protect the welfare of all children and to prevent neglect, abuse and exploitation. Section 405 of the County Institution District Law, Act of June 24, 1937, P.L. 2017, *as amended,* 62 P.S. § 2305.

8. Under section 6351(a)(2) of the Juvenile Act, *as amended,* 42 Pa.C.S. § 6351(a)(2), if a child is found to be a dependent child, a court of common pleas may transfer "temporary legal custody" of that child to an individual who, after study by the person or agency designated by the court, is found by the court to be qualified to receive and care for the child. The court may make such an order if it is best suited to the protection and physical, mental and moral welfare of the child.

9. The court had the authority to order DHS to continue its supervision of Reggie but did not do

so. *See In re Lowry,* 506 Pa. 121, 484 A.2d 383 (1984).

10. Section 6351(e) of the Juvenile Act, 42 Pa.C.S. § 6351(e), provides:

> Within six months of ... a transfer of temporary legal custody ... under subsection (a)(2), the court shall conduct a disposition review hearing for the purpose of determining whether placement continues to be best suited to the protection and physical, mental and moral welfare of the child. The court shall conduct a second review hearing not later than six months after the initial hearing, a third hearing not later than six months after the second hearing and subsequent disposition review hearings at least every 12 months until the child is returned home or removed from the jurisdiction of the court.

The court does not have to hold "disposition review hearings" if the court has determined that the child should remain permanently in foster care with a specified foster family. 42 Pa.C.S. § 6351(h). Here, the court only ordered *temporary* custody but, contrary to law, held no further hearings.

and Youth Care with respect to their foster child, but not with respect to Reggie. (N.T. at 27–29.)

In 1994 or 1995, the Barczynskis sent a letter to Reggie's biological father asking him to consent to their adoption of Reggie. (N.T. at 16.) Reggie's biological father gave his consent after a year, and the Barczynskis then proceeded to file papers to adopt Reggie. (N.T. at 16–17.)

By letter dated November 10, 1997, the Barczynskis applied for an Adoption Subsidy. By letter dated November 13, 1997, DHS denied the request because Reggie was not in the legal custody of a county agency or another state-approved agency and because the Barczynskis' adoption of Reggie was considered to be a private adoption. (DPW's Findings of Fact, No. 14; DHS Exhibit No. 2.)

On November 24, 1997, the Barczynskis filed an appeal from the DHS decision with DPW. (DPW's Findings of Fact, No. 15.) On or about December 29, 1997, the Barczynskis filed an adoption petition with the court of common pleas. (DPW's Findings of Fact, No. 16.) On January 23, 1998, the court terminated the parental rights of Reggie's biological parents and ordered that custody of Reggie remain with the Barczynskis in expectation of adoption. (DPW's Findings of Fact, No. 18; DHS Exhibit No. A–2.) On April 29, 1998, DPW issued an order denying the Barczynskis' appeal.

On appeal to this court from the DPW April 29, 1998 order,[11] the Barczynskis argue that our state law, which limits adoption assistance payments to special needs children in the legal custody of a county agency or other state-approved agency,[12] conflicts with the federal Adoption Assistance and Child Welfare Act of 1980 (Federal Law).[13] We agree.

▮ State law that conflicts with federal law is "without effect." *Cellucci v. General Motors Corp.*, 550 Pa. 407, 413, 706 A.2d 806, 809 (1998). This is because, under the Supremacy Clause of the United States Constitution, federal law preempts state law that conflicts with federal law. *Id.* Courts will find a conflict "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.*

▮ Congress stated that its purpose in enacting the Federal Law was to enable each state "to provide ... adoption assistance for children with special needs." 42 U.S.C. § 670. This statement of purpose does *not* limit adoption assistance to special needs children in the legal custody of a county agency or other state-approved agency. Moreover, the provision of the Federal Law dealing specifically with the adoption assistance program states: "Each State having a plan approved under this part shall enter into adoption assistance agreements ... with the adoptive parents of children with special needs." 42 U.S.C. § 673(a)(1)(A). The state is *not* directed to enter into adoption assistance agreements *only* with adoptive parents of special needs children in the legal custody of a county agency or other state-approved agency. Therefore, we conclude that our state adoption assistance law conflicts with the Federal Law to the extent that it withholds adoption assistance payments from special needs children who are not in the legal custody of a county agency or other state-approved agency.

Accordingly, we reverse.[14]

---

**11.** Our scope of review is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

**12.** Section 772 of the Code, 62 P.S. § 772, states, in relevant part, that an "eligible child" is a "child in the legal custody of local authorities" or a "child in the legal custody of an agency approved by [DPW]." DPW's regulation at 55 Pa.Code § 3140.202(b)(3) states that an eligible child must be "in the legal custody of the county agency or another agency approved by [DPW]."

**13.** 42 U.S.C. §§ 670–677.

**14.** Because of our disposition here, we need not address whether DHS had a duty to inform the Barczynskis that, by assuming "temporary legal custody" of Reggie, Reggie would not be eligible for adoption assistance payments.

## *O R D E R*

AND NOW, this 15th day of April, 1999, the order of the Department of Public Welfare, dated April 29, 1998, is reversed.

COLINS, President Judge, dissenting.

Although the Barczynskis unselfishly assumed legal custody of Reggie in an effort to ensure his best interests and to provide him with a stable home life, Pennsylvania law makes no provision for adoptive parents where the child they wish to adopt has been removed from the custody of the local authorities. I dissent because I disagree with the majority's conclusion that the Pennsylvania law limiting adoption assistance to children in state custody conflicts with the federal Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 670–677.

For purposes of adoption assistance benefits, Section 772 of the Public Welfare Code (Code) [1] defines "eligible child" as

a child in the legal custody of local authorities where parental rights have been terminated ... and such child has been in foster placement for a period of not less than six months and where the child has been shown to be a difficult adoption placement because of a physical and/or mental handicap, emotional disturbance, or by virtue of age, sibling relationship, or ethnicity.

62 P.S. § 772. DPW regulations promulgated for the purpose of identifying eligible children provide that "[t]he county children and youth social service agency (county agency) is the sole authority for certifying a child's eligibility for adoption assistance." 55 Pa.Code § 3140.202(a). The regulation provides that

(b) The county agency shall certify for adoption assistance children whose *placement goal is adoption* and who meet the following requirements:

(1) The child is 17 years of age or younger.

(2) Parental rights have been terminated....

(3) The child is *in the legal custody of the county agency or another agency* approved by the Department.

(4) The child shall have at least one of the following characteristics:

(i) A physical, mental or emotional condition or handicap.

(ii) A genetic condition which indicates a high risk of developing a disease or handicap.

(iii) Be a member of a minority group.

(iv) Be a member of a sibling group.

(v) Be 5 years of age or older.

(c) Prior to certification for adoption assistance, the county agency shall make reasonable efforts to find an adoptive home without providing adoption assistance....

(d) If it would be against the best interests of the child because of factors, such as the existence of significant emotional ties with prospective adoptive parents while in the care of the parents as a foster child, the requirement of subsection (c) does not apply.

55 Pa.Code § 3140.202(b)–(d) (emphasis added). Under the terms of the Code, Reggie is not an eligible child because Reggie is not in the custody of the county agency or other approved agency and DHS no longer had any placement goal for Reggie. DHS, as the sole authority for certifying eligibility, has no discretion to authorize adoption assistance for any child who does not meet the statutory requirements for eligibility.

The Child Welfare Act of 1980, 42 U.S.C. §§ 670–676, was enacted as an amendment to the Social Security Act for the purpose of improving federal support for foster care and to establish a program of federal support to encourage adoptions of children with special needs.[2] A child with special needs is one for whom the state has determined that the child cannot, or should not, be returned to his or

---

1. Act of June 13, 1967, P.L. 31, *as amended,* added by Section 1 of the Act of December 30, 1974, P.L. 1039, 62 P.S. § 772. Subdivision (e) of the Code, Sections 771 through 774, is also known as the Adoption Opportunities Act.

2. 42 U.S.C. § 670; S.Rep. No. 96–336, at 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1448, 1450.

her parents and for whom the state has determined the presence of

a factor or condition (such as ethnic background, age, or membership in a minority or sibling group, or the presence of factors such as medical conditions or physical, mental, or emotional handicaps) because of which it is reasonable to conclude that such child cannot be placed with adoptive parents without providing adoption assistance ... and [ ] that, except where it would be against the best interests of the child because of such factors as the existence of significant emotional ties with prospective adoptive parents while in the care of such parents as a foster child, a reasonable, but unsuccessful, effort has been made to place the child with appropriate adoptive parents without providing adoption assistance....

42 U.S.C. § 673(c)(2). Although, unlike Pennsylvania law, the Child Welfare Act does not specify that a child be in agency custody in order to be eligible for adoption assistance, both the statute, by its terms, and its history contemplate providing assistance only to children in state custody. The federal law refers to a state's "placement" of a "foster child" for adoption and requires that the state agency determine that the child cannot be placed for adoption because of specified factors and/or conditions, after the agency has made an unsuccessful effort to place the child with adoptive parents.

The legislative history of the Child Welfare Act of 1980 supports the conclusion that only children in agency custody are eligible for adoption assistance. The Senate Finance Committee report states that, "[u]nder the adoption subsidy program, a State would be responsible for determining which children in the State *in foster care* would be eligible for adoption assistance because of special needs which have discourage adoption." [3] In its general discussion of the bill, the committee stated [4] that although

assistance to children in foster care has been of significant benefit over the years since it was originally enacted in 1961 ....

it would be desirable to ... deemphasize the use of foster care and encourage greater efforts to place children in permanent homes. For this reason, the committee has made certain changes in the foster care provisions and has also adopted a new program of federally aided adoption assistance for *children who would otherwise continue in foster care....*

Furthermore, the federal Child Welfare Act gives the states discretion to determine child eligibility and to decide which factors and conditions to consider in determining whether a child has special needs. The committee stated, [5]

the State would have to determine that *it* could not reasonably expect to place the child in the absence of adoption assistance because of some specific factor or condition which makes the child hard to place. The determination could be based on such factors as a physical or emotional handicap, the need to place members of a sibling group with a single adoptive family, difficulty in placing children of certain ages or ethnic backgrounds, or similar factors or combinations of factors. Each State would be responsible for deciding which factors would ordinarily result in making it difficult to place certain children in adoptive homes.

Conflict between state and federal law, such that the state law is pre-empted, arises when compliance with both the federal and state law is impossible or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Matter of Reading Company,* 115 F.3d 1111 (3[d] Cir.1997); *First Federal Savings and Loan Association of Hazleton v. Office of State Treasurer, Unclaimed Property Review Committee,* 543 Pa. 80, 669 A.2d 914 (1995). In this case, Pennsylvania law does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. The Pennsylvania Public Welfare Code defines

**3.** S.Rep. No. 96–336, at 2 (1980), 1980 U.S.C.C.A.N. at 1450–51 (emphasis added).

**4.** *Id.* at 12, 1980 U.S.C.C.A.N. at 1461 (emphasis added).

**5.** *Id.* at 13, 1980 U.S.C.C.A.N. at 1462 (emphasis added).

eligibility for adoption assistance consistent with the terms of the federal act, which contemplates assistance for special needs children in foster care, i.e., state custody.

Nothing in the federal statute or in the legislative history leads to the conclusion that states must make adoption assistance benefits available to special needs children who are privately adopted.[6] In fact such a conclusion might defeat the purposes of the adoption assistance program by directing benefits away from children in foster care and other forms of state custody and toward other hard-to-place children, such as children adopted from foreign countries and through private placement agencies. The law reserves adoption assistance for children who are hard to place and who are most likely to remain in the foster care system for the long term unless those benefits are made available.

For the reasons stated above, I would affirm DPW's order.

6. The committee's report seems to suggest that the presence of a specifically enumerated factor or condition would not automatically make a child eligible for adoption assistance; rather, the state needs to make a determination that a particular child is hard to place. In this case, the Barczynskis' immediate interest in adopting Reggie would belie any determination that he was hard to place.