**Alexis GEIER, et al., Appellants,**

v.

**AMERICAN HONDA MOTOR COMPANY, INC., et al., Appellees.**

No. 98–7006.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1998.

Decided Feb. 5, 1999.

Arthur Bryant argued the cause for appellants. With him on the briefs were Robert M.N. Palmer, William Petrus and James W. Taglieri.

Benjamin S. Boyd argued the cause for appellees. With him on the brief was Eric A. Portuguese. Philip L. Cohan entered an appearance.

Before: WILLIAMS, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The question on appeal is whether federal law pre-empts a defective design lawsuit against the American Honda Motor Company for damages arising from injuries suffered by Alexis Geier[1] when her 1987 Honda Accord, which did not have an airbag, crashed into a tree. The district court granted summary judgment for Honda on the ground that the lawsuit was pre-empted by the National Traffic and Motor Vehicle Safety Act of 1966, as amended, 15 U.S.C. § 1381 *et seq.* (Safety Act), and the Federal Motor Vehicle Safety Standard 208, 49 C.F.R. § 571.208 (1997) (Standard 208), which govern the passive safety restraints that automobile manufacturers must install.[2] Joining our sister circuits, we affirm, concluding that Geier's lawsuit is impliedly pre-empted.

## I.

Under the Supremacy Clause of the Constitution, the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. In applying this Clause, courts have identified three ways in which a federal statute or regulation can pre-empt state law: by express pre-emption, by "field" pre-emption (in which Congress regulates the field "so extensively that [it] clearly intends the subject area to be controlled only by federal law"), and by implied or conflict pre-emption, which applies when a state law conflicts with a federal statute or regulation. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir.1998); *see also Cipollone v. Liggett Group*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). The Supreme Court has identified two presumptions that courts must consider when invoking the doctrine of pre-emption. First, in areas where States have exercised their historic police powers (such as the health and safety of their citizens), courts must start with a presumption against preemption, absent a "clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Second, in every pre-emption case, "[t]he purpose of Congress is the ultimate touchstone." *Id.* (quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)).

For cars manufactured between September 1, 1986, and September 1, 1987, the inclusion of a driver-side airbag was one of several passive restraint "options" from which car manufacturers could choose in order to comply with Standard 208.[3] *See* 49

---

1. Appellants are Alexis Geier, a minor at the time of the accident, and her parents, William and Claire Geier. For ease of reference we refer to appellants as "Geier."

2. The Safety Act is now codified at 49 U.S.C. § 30101 *et seq.* Geier's complaint was filed after the recodification. The revisions, however, were made "without substantive change" to the underlying provisions. *See* Pub.L. No. 103–272, § 1(a), 108 Stat. 745, 745 (1994). Because the relevant circuit courts of appeal decisions, the district court, and the parties all use the old designations, we will use them as well.

3. The requirements of Standard 208 have become more stringent. After September 1, 1989, car manufacturers had to install "either an airbag or an automatic seatbelt that would signal the driver with a warning light if the belt became unhooked." *Harris v. Ford Motor Co.*, 110 F.3d 1410, 1412 (9th Cir.1997) (citing 49 C.F.R. § 571.208). Presently, passenger cars manufactured after September 1, 1997, must have "an

C.F.R. § 571.208, S4.1.3.1.1 (1997). The effect of Standard 208 on state law is governed by two provisions of the Safety Act. The first, 15 U.S.C. § 1392(d),[4] provides:

> [w]henever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

The second provision, 15 U.S.C. § 1397(k),[5] a so-called savings clause, provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." Without stating whether it was adopting a theory of express or implied pre-emption, the district court reasoned that § 1392(d) pre-empted Geier's claim because recovery under her common law tort theory might establish a safety standard that was not identical to Standard 208. Adopting an approach articulated by the First Circuit in *Wood v. General Motors Corp.*, 865 F.2d 395, 408 (1st Cir.1988), and developed by the Ninth Circuit in *Harris v. Ford Motor Co.*, 110 F.3d 1410, 1415 (9th Cir.1997), the district court ruled that although §§ 1397(k) and 1392(d) might appear to be in "direct conflict[,] . . . it is clear that both sections can be given effect if the court finds that 'compliance with Federal standards does not exempt anyone from any liability that the States have authority to impose.'" *Geier v. American Honda Motor Co.*, CA. No. 95–64, at 3 (D.D.C. Dec. 10, 1997) (quoting *Harris*, 110 F.3d at 1415). In the district court's view, a State lacks authority to require airbags because § 1392(d) and Standard 208 pre-empt such a requirement, and therefore no common law design defect claim remained for § 1397(k) to preserve.

On appeal, Geier contends that the district court erred in granting summary judgment because § 1392(d) expressly preserved all common law claims against pre-emption and the term "standards" in § 1392(d) applies only to state legislation or regulations. Honda maintains that summary judgment was appropriate because the Safety Act either expressly preempts Geier's lawsuit, or impliedly pre-empts it because a verdict in her favor would conflict with Standard 208.[6]

## II.

The Supreme Court has considered pre-emption under § 1392(d), although it did not directly address the issues presented in the instant appeal. *Freightliner Corp. v. Myrick*, 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995), involved Standard 121, which was promulgated by the National Highway Traffic Safety Administration acting pursuant to the Safety Act, and required that tractor trailers stop within a certain distance. For all practical purposes, Standard 121 required the installation of antilock braking systems ("ABS"). Following the decision of the Ninth Circuit that Standard 121 was unsupported by substantial evidence, *see id.* at 285, 115 S.Ct. 1483 (citing *Paccar, Inc. v. NHTSA*, 573 F.2d 632 (9th Cir.1978)), a driver seriously injured in a collision with an 18–wheel tractor-trailer sued a truck manufacturer under a common-law state tort theory, alleging that the absence of ABS on the truck was a design defect that caused it to jackknife when the truck driver attempted to

---

inflatable restraint system at the driver's and right front passenger's position." 49 C.F.R. § 571.208, S4.1.5.3 (1997). *See generally Wood v. General Motors Corp.*, 865 F.2d 395, 398–99 (1st Cir.1988).

4. Section 1392(d) is now codified at 49 U.S.C. § 30103(b)(1) (1994), which uses similar language:

> [w]hen a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter . . . .

5. Section 1397(k) is now codified, with some changes, at 49 U.S.C. § 30103(e) (1994): "Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law."

6. Honda does not maintain that field pre-emption applies.

make a sudden stop. *See id.* at 282–83, 115 S.Ct. 1483. In response, the manufacturer asserted that § 1392(d) expressly pre-empted such claims. The Supreme Court rejected this argument, observing that in view of the Ninth Circuit's suspension of Standard 121,[7] "[t]here is no express federal standard addressing stopping distances or vehicle stability for trucks and trailers" and that "States remain free to 'establish, or to continue in effect,' their own safety standards concerning those 'aspect[s] of performance.'" *Id.* at 286, 115 S.Ct. 1483 (quoting § 1392(d)) (alteration in original). The Court further concluded that the claims were not impliedly preempted because the absence of any federal regulation governing ABS meant that private parties would not face a conflict between complying "with both federal and state law." *Id.* at 289, 115 S.Ct. 1483. The Court also concluded that a finding of liability against tractor-trailer manufacturers "would undermine no federal objectives or purposes with respect to ABS devices." *Id.* at 289–90, 115 S.Ct. 1483. The Court explicitly left open the question whether "the term 'standard' in 15 U.S.C. § 1392(d) preempts only state statutes and regulations, but not common law." *Id.* at 287 n. 3, 115 S.Ct. 1483. Although it referred to § 1397(k), *see id.* at 284, 115 S.Ct. 1483, the Court did not consider the relationship between the pre-emption and savings clauses.

Thus far, five circuit courts of appeal have analyzed the issue of pre-emption under the Safety Act when plaintiffs have brought design defect claims based on the absence of airbags. In each case, Section 208 did not require airbags for the model-year cars in question, but presented them as one of several options from which manufacturers could choose. Four of the five circuit courts of appeal held that such claims were impliedly pre-empted, while the Ninth Circuit held that the claims were expressly pre-empted. *See, e.g., Harris,* 110 F.3d at 1416 (9th Cir.); *Montag v. Honda Motor Co.,* 75 F.3d 1414, 1417 (10th Cir.1996); *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1126 (3d Cir.1990); *Taylor v. General Motors Corp.,* 875 F.2d 816, 827 (11th Cir.1989);[8] *Wood,* 865 F.2d at 412 (1st Cir.). Contemporaneously, however, a number of state supreme courts have reached the opposite conclusion, holding that the Safety Act does not preclude these types of claims, relying heavily on the broad sweep of the savings clause. *See, e.g., Drattel v. Toyota Motor Corp.,* 92 N.Y.2d 35, 677 N.Y.S.2d 17, 699 N.E.2d 376, 382, 383–86 (N.Y.1998); *Munroe v. Galati,* 189 Ariz. 113, 938 P.2d 1114, 1119–20 (Ariz.1997); *Tebbetts v. Ford Motor Co.,* 140 N.H. 203, 665 A.2d 345, 347–48 (N.H.1995).

As noted, Geier contends that § 1397(k) expressly preserved "all common law claims" against pre-emption and that the term "standards" in § 1392(d) applies only to state legislation or regulations. This contention obviously cannot be rejected out of hand, yet nor can Honda's contention that "§ 1392(d) expressly preempts state safety standards not 'identical' to applicable federal standards." In Honda's view, because Standard 208 allowed car manufacturers the option of choosing an airbag, a jury verdict in favor of Geier on her design defect claim would require car manufacturers to comply with a different standard.[9]

---

7. The Ninth Circuit, in rejecting Standard 121, recognized that further refinement of the ABS system might lead to greater public safety. It thus held that the agency could enforce an ABS requirement if it could produce "more probative and convincing data evidencing the reliability and safety" of vehicles with ABS. *Paccar,* 573 F.2d at 643.

8. The Eleventh Circuit recently reaffirmed *Taylor.* In *Irving,* the court noted that although its decision in *Myrick v. Freuhauf Corp.* stated that *Taylor* had been abrogated in part, *see* 136 F.3d at 767 n. 1 (citing *Myrick,* 13 F.3d 1516, 1521–22 (11th Cir.1994)), subsequent Supreme Court precedent made clear that "*Taylor* is correct and

can be used for evaluating preemption of state law." *Id.*

9. However, Geier's contention that the term "safety standard" in § 1392(d) applies to aspects of performance, while her lawsuit involves a design defect, gets her nowhere for reasons noted by the First Circuit in *Wood,* 865 F.2d at 416–17, including that although design and performance standards are "analytically distinct, in practice the line is not so clear," as here where "[b]y requiring seat belts or passive restraints, [Standard] 208 has elements of a design standard."

The language of § 1392(d) is fairly sweeping, providing that when a federal motor vehicle safety standard is in effect, "no State or political subdivision of a State shall have *any* authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment *any* safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." 15 U.S.C. § 1392(d) (emphasis added). At a minimum, this language restricts a State's authority to enact legislation or regulations that affirmatively require car manufacturers to adopt standards not identical to Standard 208. *See Wood,* 865 F.2d at 408. In other words, a State could not require, by statute or regulation, that a car manufacturer install airbags in models for which Standard 208 makes them only an option.

On its face, moreover, the term "standard" in § 1392(d) could apply to the requirements imposed by common law tort verdicts. As the Supreme Court has observed, state "regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone,* 505 U.S. at 521, 112 S.Ct. 2608 (plurality opinion) (quoting *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)); *see also Harris,* 110 F.3d at 1414; *Wood,* 865 F.2d at 410. So understood, the term "standard" in § 1392(d) is broad enough to include duties established by state tort law. *See Wood,* 865 F.2d at

410. As the Supreme Court's decision in *Medtronic,* 518 U.S. 470, 116 S.Ct. 2240, analyzing the Medical Device Amendments of 1976 suggests, the use of the term "standard" in the Safety Act and "requirements" in the Medical Device Amendments appear to be for the same purpose, namely, to establish that a State cannot impose a duty on manufacturers that differs from those imposed by the federal government.[10] Common law liability in this specific context, therefore, can reasonably be viewed as constituting a "standard" that might conflict with Standard 208.

Section 1392(d), however, cannot be viewed in isolation, *see American Textile Mfrs. Inst., Inc. v. Donovan,* 452 U.S. 490, 513, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981), but must be interpreted in light of the savings clause in § 1397(k), which provides that "[c]ompliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law." Honda interprets this language as preventing car manufacturers from using compliance with federal safety standards as a defense to common law liability, in cases where the State retains authority to impose such liability, and there is legislative history to support this view.[11] For example, Honda maintains that even with § 1392(d), plaintiffs could still pursue design defect claims when federal standards do not address the component at issue. The Ninth Circuit in *Harris* reached a similar conclusion, noting that "§ 1392(d) removes the States' authority to subject anyone to liability for the breach of non-identical safety standards. The most reasonable and plausible reading of § 1397(k), therefore, is that com-

---

**10.** In *Medtronic,* five justices agreed that "state common-law damages actions do impose 'requirements' and are therefore preempted where such requirements would differ from those imposed" by the statute. 518 U.S. at 509, 116 S.Ct. 2240 (O'Connor, J., concurring in part and dissenting in part); *id.* at 504, 116 S.Ct. 2240 (Breyer, J., concurring in judgment). The *Medtronic* plurality, in contrast, concluded the term "requirements" was "linked with language suggesting that its focus is device-specific enactments of positive law by legislative or administrative bodies, not the application of general rules of common law by judges and juries," *id.* at 489, 116 S.Ct. 2240, although it recognized that the Court "on prior occasions concluded that a statute preempting certain state 'requirements' could

also pre-empt common-law damages claims." *Id.* at 487–88.

**11.** H.R.Rep. No. 1776, at 24 (1966) ("It is intended, and this subsection [§ 1397(k)] specifically establishes, that compliance with safety standards is not to be a defense or otherwise to affect the rights of parties under common law...."); S.Rep. No. 1301, at 12 (1966), U.S. Code Cong. & Admin. News 1966 at 2709, 2720 (noting that "the Federal minimum safety standards need not be interpreted as restricting State common law standards of care. Compliance with such standards would thus not necessarily shield any person from product liability at common law").

pliance with Federal standards does not exempt anyone from any liability that the States *have authority to impose.*" 110 F.3d at 1415 (emphasis added). *Cf. Wood,* 865 F.2d at 412.

The conclusion that Geier's lawsuit is expressly pre-empted by the Safety Act is problematic, however, for two reasons. First, the interpretation of the two provisions adopted by *Harris* is not the only one available. For example, the broad language of the savings clause raises doubts that Congress intended to preserve State authority to impose standards only to the extent that the pre-emption clause did not take that power away. As the Court of Appeals of New York observed, "[i]t strains reason and common sense to suggest that Congress used sweeping language to create a constricted universe." *Drattel,* 677 N.Y.S.2d 17, 699 N.E.2d at 382. The inclusion of a broadly worded savings clause such as § 1397(k) indicates that Congress did not wish to deprive plaintiffs of all their remedies at common law. To read § 1397(k) too narrowly would undermine the section's express language preserving common law liability. *Pokorny,* 902 F.2d at 1121.

Second, the presumption against pre-emption counsels against finding express pre-emption when the purpose of Congress is not clear from the statute's language. In light of the apparent tension between §§ 1392(d) and 1397(k), it would be difficult to discern from the Act a "clear and manifest purpose of Congress" to pre-empt a design defect claim based on the absence of an airbag. *See Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240. Four other circuits agree. *See Pokorny,* 902 F.2d at 1121 (3d Cir.); *Taylor,* 875 F.2d at 823–25 (11th Cir. ); *Kitts v. General Motors*

*Corp.,* 875 F.2d 787, 789 (10th Cir.1989); *Wood,* 865 F.2d at 401 (1st Cir.).[12]

Ultimately, we need not resolve whether Geier's claim is expressly pre-empted, however, because we conclude that a verdict in her favor would stand as an obstacle to the federal government's chosen method of achieving the Act's safety objectives, and consequently, the Act impliedly pre-empts her lawsuit. The conclusion arises largely from the position advanced by Honda, in the alternative, that state jury verdicts that hold manufacturers liable for not installing airbags will create a conflict with Standard 208.

■ As a threshold matter, we are unpersuaded by Geier's contention, relying on *Cipollone,* that the court cannot reach the implied pre-emption argument because congressional intent is expressly stated in § 1397(k), which saves all common law claims from pre-emption, and therefore only express preemption analysis is applicable. It is true that the Supreme Court in *Cipollone* observed that when Congress has included a provision explicitly addressing the issue of pre-emption, and

> when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from substantive provisions of the legislation. . . . Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not pre-empted.

505 U.S. at 517, 112 S.Ct. 2608 (citations and internal quotation marks omitted). But the Supreme Court has also rejected Geier's interpretation. In *Myrick,* the Court noted

---

12. Although these circuits reject express preemption of no-airbag claims, their analysis differs. The First Circuit, for example, suggested that Congress in 1966 did not contemplate the development within state tort law of design defect claims that might conflict with federal safety standards. *Wood,* 865 F.2d at 403–04. As a result, the *Wood* court found no congressional intent either to pre-empt this type of action under section 1392(d) or to preserve it under the savings clause. *Id.* at 407. *Cf. Kitts,* 875 F.2d at 789 (adopting *Wood*'s implied pre-emption analysis without discussing in detail the express preemption issue). The Third and Eleventh Circuits

have criticized the *Wood* court's express preemption analysis, concluding that the savings clause covers design defect claims. *Pokorny,* 902 F.2d at 1121 n. 6; *Taylor,* 875 F.2d at 825. The Eleventh Circuit agreed with the First Circuit, however, that express pre-emption did not apply in view of the conflict between the pre-emption and savings clauses and "the failure of Congress explicitly to include reference to state common law in the Act's preemption clause." *Id.* The Third Circuit also noted that Congress in other statutes had explicitly referred to common law actions when it sought to pre-empt them. 902 F.2d at 1121.

that some circuit courts of appeal had read *Cipollone* to mean that "implied pre-emption cannot exist when Congress has chosen to include an express pre-emption clause in a statute. This argument is without merit." *Myrick*, 514 U.S. at 287, 115 S.Ct. 1483. The Court instructed that the presence of "an express definition of the pre-emptive reach of a statute" only creates a reasonable inference "that Congress did not intend to pre-empt other matters." *Id.* at 288, 115 S.Ct. 1483. Such a clause does not "entirely foreclose[ ] any possibility of implied pre-emption." *Id.*

The tension between §§ 1392(d) and 1397(k) prevents the identification of any "express definition" of the reach of preemption in the Safety Act. Furthermore, in *Myrick* the Supreme Court engaged in implied pre-emption analysis of the Safety Act after concluding that § 1392(d) did not "expressly extinguish state tort law" for no-ABS claims. *Id.* at 287, 115 S.Ct. 1483; *see also Montag*, 75 F.3d at 1417. Rejecting the argument that *Cipollone* barred consideration of implied preemption in all cases involving express pre-emption language, the Supreme Court concluded that no implied pre-emption existed on the facts before it because "there is simply no federal standard for a private party to comply with."*Myrick*, 514 U.S. at 289, 115 S.Ct. 1483. Therefore, *Cipollone* does not bar this court from considering Honda's implied pre-emption argument.

▆▆▆ Implied conflict pre-emption occurs "where it is impossible for a private party to comply with both state and federal requirements, ... or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 287, 115 S.Ct. 1483 (internal quotation marks omitted). Federal regulations, as well as federal statutes, can pre-empt conflicting state law. *Pokorny*, 902 F.2d at 1122; *see also Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Unlike *Myrick*, in which the Supreme Court found no implied pre-emption, *see* 514 U.S. at 288, 115 S.Ct. 1483, the instant case involves a federal safety standard that governs the use of airbags in 1987 model-year cars. Although the standard does not mandate or forbid the use of airbags, it presents them as one of several options from which manufacturers may choose. While Geier maintains not unpersuasively that a design defect lawsuit based on the absence of an airbag does not conflict with Standard 208 because Honda can be held accountable under state law for failing to do more than the minimum required by the option it chose (*i.e.* installing a manual seat belt with a warning light), her argument fails to surmount the obstacle that a favorable verdict would present to achieving congressional objectives in the chosen manner. As the First Circuit observed in *Wood*, allowing liability for the absence of airbags would "interfere[ ] with the *method* by which Congress intended to meet" its goal of increasing automobile safety. *Wood*, 865 F.2d at 408. A successful no-airbag claim would mean that an automobile without an airbag was defectively designed. Congress, however, delegated authority to prescribe specific motor vehicle safety standards to the Secretary of Transportation, *see* 49 U.S.C. § 30111(a) (1994), who in turn explicitly rejected requiring airbags in all cars on the ground that a more flexible approach would better serve public safety. 49 Fed.Reg. 28,-962, 29,000–02 (1984).

The tortured history of Section 208 demonstrates that federal regulators have vacillated on the relative merits of requiring or including airbags in passenger vehicles. *See Wood*, 865 F.2d at 398–99. It also reveals how far public acceptance of air bags has come and, concomitantly, the success of the Secretary's decision on how to implement the Act. When the Secretary promulgated the regulations at issue in this case, she rejected an all-airbag rule out of concern that notwithstanding the safety benefits of airbags, the public might respond negatively to the unfamiliar technology if it was required in all cars. 49 Fed.Reg. at 28,989. In the Secretary's view, gradually phasing in airbags could potentially address "unfounded" fears among members of the public that airbags were unsafe because affording consumers a choice among passive restraint systems would expose them to the benefits of the airbag technology. *Id.* at 28,988, 29,001. *Cf. State Farm Mut. Auto. Ins. Co. v. Dole*, 802 F.2d 474, 488–89 (D.C.Cir.1986). At the same time, the Secre-

tary was concerned that not affording manufacturers discretion to install an automatic occupant restraint system ran the risk of impeding the development of more effective protective systems. 49 Fed.Reg. at 29,001. Thus, a performance standard making airbags one of several options car manufacturers could choose to comply with the passive restraint requirements of Standard 208, rather than mandating specific use of one safety device, would advance public safety in two respects, by allowing consumers to adjust to the new technology and by permitting experimentation with designs for even safer systems. 49 Fed.Reg. at 28,988, 28,997.

With this history in mind, and consistent with the policy decision made by the Secretary, we conclude that allowing design defect claims based on the absence of an airbag for the model-year car at issue would frustrate the Department's policy of encouraging both public acceptance of the airbag technology and experimentation with better passive restraint systems. Even if the Secretary's gradual adoption of an airbag requirement has increased public acceptance of the technology over time, concerns about public reaction still existed when Geier's 1987 Honda was manufactured. Furthermore, regardless of possible fluctuations in public acceptance of airbags at that time, the concern about fostering the most effective passive restraint systems through experimentation remained. Therefore, "[b]ecause potential common law liability interferes with the regulatory methods chosen by the federal government to achieve the Safety Act's stated goals," *Pokorny*, 902 F.2d at 1123, Geier's lawsuit claiming that the car she was driving

was defectively designed because it lacked airbags is implicitly pre-empted.[13] Accordingly, we affirm the grant of summary judgment to Honda.

---

**13.** Contrary to Geier's contention, our conclusion is not at odds with the position taken by the United States in prior Safety Act cases. The United States has previously contended that § 1392(d) "does not expressly or impliedly preempt design defect tort actions based on the claim that a vehicle was defective simply because it did not contain an airbag." Brief of the United States as Amicus Curiae, on Petition for a Writ of Certiorari at 7, *Wood v. General Motors Corp.,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 782 (1990) (No. 89–46). But, the United States ultimately concluded that a no-airbag claim was pre-empted in *Wood* because the Department of Transportation specifically determined that "an all airbag rule would *disserve* the

*safety* purposes of the Act" and that this policy "would be disrupted by tort liability, which therefore would be preempted." *Id.* at 15 (emphasis in original). "If manufacturers are held liable for not installing airbags, ... [a sizeable damage award against them] is likely to lead auto makers to install airbags in all cars. That *outcome would obviously eliminate the diversity* that the Secretary [of Transportation] found necessary to promote motor vehicle safety." *Id.* at 13–14; *see also* Brief of the United States as Amicus Curiae, on Petition for a Writ of Certiorari at 28, *Freightliner Corp. v. Myrick,* 514 U.S. 280, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995) (No. 94–286).