DARREL W. HILST *et al.*, Plaintiffs-Appellants, v. GENERAL MOTORS CORPORATION *et al.*, Defendants-Appellees.

Third District    No. 3—98—0087

Opinion filed May 26, 1999.—Rehearing denied July 19, 1999.

Gary L. Cline and Thomas Londrigan (argued), both of Londrigan, Potter & Randle, P.C., of Springfield, for appellants.

R. Michael Henderson, of Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria, and Elaine S. Wright (argued) and Frank Nizio, both of Bowman & Brooke, LLP, of Detroit, Michigan, and Leslie Landau (argued), of McCutchen, Doyle, Brown & Endersen, of San Francisco, California, for appellee General Motors Corporation.

Joseph G. Feehan and Brad A. Elward, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Philip M. Bradford.

JUSTICE KOEHLER delivered the opinion of the court:

In this appeal, we are principally called upon to decide whether the Peoria County circuit court erred when it concluded that the plaintiffs' "no airbag" claim was preempted by federal law. Additionally, we are called upon to review several rulings made by the circuit court during the course of and after trial. Because we conclude that the circuit court did not err, we affirm.

## I. FACTS

Plaintiffs Darrel and Judith Hilst were involved in an automobile collision with defendant Philip Bradford on February 28, 1994, when Bradford's vehicle crossed the road's center line and hit the plaintiffs' Pontiac Grand Am. At the time of the accident, all three persons were wearing their seatbelts. Darrel Hilst, the only person seriously injured,

suffered a torn mesenteric artery that resulted in the removal of a large section of his colon. The plaintiffs' 1989 Grand Am was equipped with a passive restraint system that was designed to automatically operate.

Darrel Hilst filed suit against defendants Bradford and General Motors Corporation (GM) for his injuries alleging that Bradford negligently caused the collision and that GM manufactured a defective Grand Am that enhanced Darrel's injuries. Judith Hilst filed suit against Bradford for her injuries and against Bradford and GM for loss of consortium. Prior to trial, Judith Hilst settled her claim against Bradford. The plaintiffs alleged that GM: (1) failed to equip the Grand Am with a driver's side airbag; (2) equipped the Grand Am with a restraint system that did not properly operate to restrain Darrel Hilst; and (3) failed to equip the Grand Am with a steering wheel that adequately absorbed energy when struck by a driver during a frontal collision.

Federal Motor Vehicle Safety Standard 208 (Standard 208) is promulgated under the National Traffic and Motor Vehicle Safety Act (Safety Act) (15 U.S.C. § 1381 et seq. (1988), recodified as 49 U.S.C. § 30102 et seq. (1994)). It provides automobile manufacturers with "the option [to] *** equip[ ] cars with either automatic seatbelts or airbags." 49 C.F.R. § 571.208, S4.1.3.3, S4.1.1.1 through 4.1.1.2. Based upon Standard 208, GM elected the seatbelt option for the 1989 Grand Am that was later purchased by the plaintiffs. The plaintiffs claimed that although Standard 208 did not require airbags to be placed in the 1989 Grand Am, GM nevertheless should be liable under state law for the Grand Am's failure to be crashworthy without a driver's side airbag.

The Peoria County circuit court granted GM a partial summary judgment on the plaintiffs' "no airbag" claim concluding that it was preempted by Standard 208 and the following provision of the Safety Act:

> "Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard." 15 U.S.C. § 1392(d) (1988).

The circuit court also granted GM's motion to prevent the plaintiffs from introducing evidence of airbags as a feasible alternative design to the passive seatbelts that were installed in the plaintiffs' Grand Am.

The jury awarded a verdict in favor of Darrel Hilst in the amount

of $226,000 against Bradford; however, the jury returned a verdict against the plaintiffs in favor of GM. Subsequently, the plaintiffs filed a posttrial motion as to Bradford and GM seeking a judgment notwithstanding the verdict or a new trial on all issues as to GM and a new trial on the issue of damages as to Bradford. The circuit court denied the plaintiffs' motion. The plaintiffs' claim against Bradford was subsequently settled and is not at issue before this court. The plaintiffs appeal the various rulings as they relate to GM.

## II. ANALYSIS

### A. Preemption

At the outset, we note that review of a summary judgment is *de novo*. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333, 662 N.E.2d 397, 402 (1996). When the pleadings, affidavits, depositions, admissions, and exhibits on file viewed in the light most favorable to the nonmoving party reveal that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Busch*, 169 Ill. 2d at 333, 662 N.E.2d at 402.

In this case, we must decide whether common law claims alleging that automobiles are defective because they are not equipped with airbags are preempted by the federal Safety Act and Standard 208. Preemption will occur if: (1) state law conflicts with federal law; or (2) the legislative field is occupied by federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 120 L. Ed. 2d 407, 423, 112 S. Ct. 2608, 2617 (1992). When Congress enacts a provision that defines the federal law's preemptive reach, any matter beyond that reach is not preempted. *Cipollone*, 505 U.S. at 516, 120 L. Ed. 2d at 423, 112 S. Ct. at 2617. There are two presumptions that courts must consider when invoking the doctrine of preemption. First, in areas where states have exercised their historic police powers, such as the health and safety of their citizens, courts must start with a presumption against preemption, absent a clear and manifest purpose of Congress. Second, in every preemption case, the purpose of Congress is the ultimate touchstone. *Geier v/American Honda Motor Co.*, 166 F.3d 1236, 1237 (D.C. Cir. 1999).

Federal court decisions interpreting a federal act are binding upon our Illinois courts. *Busch*, 169 Ill. 2d at 335, 662 N.E.2d at 403. We therefore look to *Pokorny v. Ford Motor Co.*, 902 F.2d 1116 (3d Cir. 1990), and *Geier v. American Honda Motor Co.*, 166 F.3d 1236, 1237 (D.C. Cir. 1999), for guidance in deciding the preemption issue presented here on appeal.

In *Pokorny*, the third circuit analyzed the Safety Act's preemption

provision, savings clause, and Standard 208. In so doing, the court initially held that the common law action was not expressly preempted. *Pokorny*, 902 F.2d at 1121. Instead, after considering both the preemption provision and the savings clause, the court held "that Congress did not intend all common law actions for design defects \*\*\* to be expressly pre-empted by federal regulations like Standard 208." *Pokorny*, 902 F.2d at 1121. The third circuit went on to explain, however, that a "federal law may impliedly pre-empt state law to the extent that the state law conflicts with a federal regulatory scheme." *Pokorny*, 902 F.2d at 1122. The court limited implied preemption to those laws that create an actual conflict with a federal regulatory scheme. *Pokorny*, 902 F.2d at 1122.

▪ In reviewing the legislative history of the Safety Act, the third circuit concluded that Congress' goal was to reduce traffic accidents and the fatalities that arise from such accidents. *Pokorny*, 902 F.2d at 1122. To achieve this goal, the federal government provided automobile manufacturers with the flexibility to choose among several options for passenger restraint systems according to Standard 208. *Pokorny*, 902 F.2d at 1123. Consequently, the court concluded that a common law claim asserting that an automobile is defectively designed when it lacks airbags presents an actual conflict with the Safety Act and Standard 208 because it frustrates Congress' method for implementing its goal. *Pokorny*, 902 F.2d at 1123. In following the third circuit, we also conclude that the plaintiffs' "no airbag" claim is impliedly preempted by the federal Safety Act and Standard 208 because it undermines Congress' intent.

Likewise, in *Geier*, after she was involved in a car accident, the plaintiff filed suit against the manufacturer of her 1987 Honda Accord, alleging defective design for failing to install an airbag. The D.C. circuit, after declining to rule whether the claim was expressly preempted, held that it was impliedly preempted "because we conclude that a verdict in her favor would stand as an obstacle to the federal government's chosen method of achieving the Act's safety objectives." *Geier*, 166 F.3d at 1242.

The plaintiffs further assert that the existence of the Safety Act's savings clause precludes a finding of preemption. The savings clause states that "Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from liability under the common law." 15 U.S.C. § 1397(k) (1988). However, this argument was rejected in *Geier*.

> "The tension between §§ 1392(d) and 1397(k) prevents the identification of any 'express definition' of the reach of preemption in the Safety Act. \*\*\*

\*\*\* [T]he instant case involves a federal safety standard that governs the use of airbags in 1987 model-year cars. Although the standard does not mandate or forbid the use of airbags, it presents them as one of several options from which manufacturers may choose. \*\*\* [The plaintiffs' savings clause] argument fails to surmount the obstacle that a favorable verdict would present to achieving congressional objectives in the chosen manner." *Geier*, 166 F.3d at 1242.

The court went on to note the inherent inconsistency in allowing a "no airbag" claim to go forward. Such a claim would mean that an automobile without an airbag was necessarily defectively designed. However, the Secretary of Transportation (through the power granted to him from Congress) rejected mandatory airbags in all cars in 1987, opting instead for a more flexible approach. *Geier*, 166 F.3d at 1242.

"[I]t is well-established that a savings clause like § 1397(k) does not 'save' common law actions that would subvert a federal statutory or regulatory scheme." *Pokorny*, 902 F.2d at 1125. See also *Wood v. General Motors Corp.*, 865 F.2d 395, 415-16 (1st Cir. 1988). Following our conclusion that the plaintiffs' cause of action would indeed subvert the statutory and regulatory scheme presently in place, and following the federal courts of appeals' decisions, the savings clause is of no avail. We therefore affirm the circuit court's decision granting summary judgment based upon preemption.

### B. Jury Instruction on Alternative Design

■ We must decide on review whether the circuit court abused its discretion in instructing the jury. *Bargman v. Economics Laboratory, Inc.*, 181 Ill. App. 3d 1023, 1025, 537 N.E.2d 938, 940 (1989). In the case at bar, the circuit court instructed the jury on alternative design as follows:

"Defendant General Motors did not have a duty to manufacture the car with a different design if there were no feasible alternative designs, that is, designs that were economical, effective, practical, and possible given the state of the art at the time the car was manufactured."

The plaintiffs argue that because this non-Illinois Pattern Jury Instruction (IPI) improperly suggested that the plaintiffs had the burden to prove a feasible alternative design, such suggestion is reversible error. The use of a non-IPI instruction is improper where the IPI instruction accurately states the law. *Rios v. Navistar International Transportation Corp.*, 200 Ill. App. 3d 526, 535, 558 N.E.2d 252, 259 (1990). However, each party has the right to have the jury instructed on his theory of the case and the circuit court, in exercising its discretion, must instruct the jury on all issues which it finds have been

raised by the evidence presented. *Rios*, 200 Ill. App. 3d at 535, 558 N.E.2d at 259.

In *Kerns v. Engelke*, 76 Ill. 2d 154, 390 N.E.2d 859 (1979), our supreme court was presented with a non-IPI jury instruction similar to the challenged instruction in this case. There, the circuit court instructed the jury as follows:

> " 'There is no duty upon the manufacturer of the forage blower to manufacture the product with a different design, if the different design is not feasible. Feasibility includes not only elements of economy, effectiveness and practicality, but also technological possibilities under the state of the manufacturing art at the time the product was produced.' " *Kerns*, 76 Ill. 2d at 164, 390 N.E.2d at 864.

The supreme court held that this instruction correctly stated the law. The *Kerns* jury instruction is nearly identical to the jury instruction at issue. We therefore conclude that the circuit court did not abuse its discretion when it tendered this instruction.

## III. CONCLUSION

In sum, we conclude that the circuit court did not err in granting the defendant's motion for summary judgment when it concluded that the plaintiffs' "no airbag" claim was preempted by federal law: (1) a common law claim asserting that an automobile is defectively designed when it lacks airbags presents an actual conflict with the federal Safety Act and Standard 208 because it frustrates Congress' method for implementing its goal to reduce traffic accidents and fatalities; and (2) such a common law claim is impliedly preempted by the federal Safety Act and Standard 208 because it undermines Congress' intent.

Affirmed.

HOLDRIDGE, P.J., and SLATER, J., concur.