BATCHELDER, Circuit Judge,
concurring in judgment.
I agree with the majority that the maximum occupancy regulations at issue here are valid exercises of the Cities’ police powers that withstand the scrutiny of the Fair Housing Act, but I cannot concur in its reasoning. In my opinion, the majority gives far too little respect to the traditional police powers of states and localities. Requiring the Cities to prove their ordinances reasonable not only turns the traditional notion of federalism on its head, but contradicts the basic assumption of our legal system that plaintiffs in civil litigation bear the burden of making out each element of their claims. I do not read anything in the Fair Housing Act as requiring this result. I therefore respectfully object to the majority’s characterization of the controlling law in Part III of its opinion.
I.
The majority relies heavily on “general principles of statutory construction” for its conclusion that the Cities should have to prove that their ordinances are “reasonable,” because that term is found in an “exemption” to the FHA. It also dismisses in a single paragraph the concept that ordinances enacted pursuant to historic, local police powers are entitled to a presumption of validity in federal courts with the observation that this idea emanates from cases involving constitutional due process challenges, not potential FHA violations. In my view, this is exactly the wrong approach.
Instead, we should begin by recognizing the traditional deference given to exercises of a locality’s police power. This presumption of validity stems from a recognition that federal courts should be wary to tread on the spheres of authority that were never given up by state and local governments. The majority does not disturb the district court’s finding that the maximum occupancy ordinances at issue are in fact exercises of police powers intended to prevent overcrowding in apartment buildings, and the Supreme Court has confirmed that such laws are enacted to protect the health and safety of citizens. See City of Edmonds v. Oxford House, Inc., 514 U.S. 725, 733-34, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995). Health and safety concerns are at the very heart of local police powers, and our respect for ordinances controlling uses of land for these reasons extends far back into our jurisprudence. See, e.g., Tower Realty v. City of Detroit, 196 F.2d 710, 722 (6th Cir.1952) (quoting Fischer v. City of St. Louis, 194 U.S. 361, 370, 24 S.Ct. 673, 48 L.Ed. 1018 (1904)) (“The power of the legislature to authorize its municipalities to regulate and suppress all such places ... as, in its judgment, are likely to be injurious to the health of its inhabitants, or to disturb people living in the immediate neighborhood ..., is so clearly within the police power as to be no longer open to question”). Such enactments have long been accorded a presumption of validity. See, e.g., Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303 (1926) (requiring zoning laws to be upheld as valid exercises of police power unless “clearly arbitrary or unreasonable, having no substantial relation to the *639 public health, safety, morals or general welfare”); Goldblatt v. Town of Hempstead, New York, 369 U.S. 590, 593, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (“If this ordinance is otherwise a valid exercise of the town’s police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.... The power which the states have of prohibiting such use ... as will be prejudicial to the health, the’ morals, or the safety of the public, is not, and consistently with the existence and safety of organized society, cannot be, burdened with the condition that the state must compensate such individual owners for pecuniary losses they may suffer” (internal quotations omitted)); Village of Belle Terre v. Boraas, 416 U.S. 1, 9, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (acknowledging a village’s police power as “ample to lay out zones where family values, youth values, and the blessings Of quiet seclusion and clean air make the area a sanctuary for people”); Village of Arlington Hts. v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (upholding denial of building permit for multi-family, low income housing as part of rational zoning plan); Memphis v. Greene, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981) (upholding against a racial discrimination claim an ordinance diverting traffic from residential neighborhood); Tower Realty, 196 F.2d at 724 (“Every reasonable presumption or intendment must be indulged in favor of the validity of the ordinance; and, in case of doubt, every presumption not clearly inconsistent with the 'language and subject matter is to be made in favor of its constitutionality”); Lakewood, Ohio Congregation of Jehovah’s Witnesses, Inc. v. City of Lakewood, Ohio, 699 F.2d 303, 308 (6th Cir.1983) (upholding denial to build church in areas zoned as exclusively residential); Curto v. City of Harper Woods, 954 F.2d 1237, 1242 (6th Cir.1992) (per curiam) (holding that ordinances, whether zoning or regulatory, “which rep-resente ] an exercise of the municipality’s police powers [are] presumed to be constitutionally valid, with the burden of showing unreasonableness being cast upon those who challenge the ordinance.... [S]uch presumptions are entitled to as much force and effect under summary judgment procedure as elsewhere” (internal quotations omitted)). All exercises of police powers are entitled to an equal level of respect. See Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 529, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959).
Few of our cases articulate this basic doctrine more clearly than Kutrom Corp. v. City of Center Line, 979 F.2d 1171 (6th Cir.1992), to which the majority gives only passing obeisance. The question presented in that case was whether summary judgment was properly granted on the basis of the ordinance’s presumptive validity without requiring the city, as the moving party, to provide any affirmative evidence of the law’s reasonableness. See id. at 1171-72. Holding that mere reliance on the presumption of validity was proper, we noted that the “lenient ‘rational basis’ test finds its least stringent application in cases involving a governmental unit’s exercise of its police powers.” Id. at 1174. We required the city merely to invoke the presumption and identify a possible, legitimate basis for the ordinance in order to shift the burden of proof on reasonableness to the challengers. Once invoked, “the force of the presumption of validity [rendered any further] justification for [the] regulatory ordinance unnecessary.” Id. at 1175.
In light of the degree to which the presumptive validity of police power ordinances is ingrained in our jurisprudence, the majority’s offhand distinction of these cases on the basis that they were decided in the context of constitutional due process challenges instead of the FHA is astounding. First, contrary to the majority’s assertion, Fourteenth Amendment Due Process law is not the only context in which this respect for historic police powers has been accorded. As we pointed out in Ku-trom Corp., the Supreme Court, in uphold *640 ing a Sunday closing law in the face of an Equal Protection Clause challenge, commented that “a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it.” Id. at 1174-75 (quoting McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)). Indeed, the Court has made it quite clear that only classifications based on a few suspect or quasi-suspect groups will get any higher level of Equal Protection scrutiny. The Court has also stated plainly that, notwithstanding an apparent conflict, it will presume that federal laws do not preempt exercises of traditional state and local police powers under the Constitution’s Supremacy Clause “unless that was the clear and manifest purpose of Congress.” Ray v. Atlantic Rich-field Co., 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)); see also Hill v. State of Florida ex. rel. Watson, 325 U.S. 538, 552, 65 S.Ct. 1373, 89 L.Ed. 1782 (1945) (Frankfurter, J., dissenting) (“The principle is thoroughly established that the exercise by the state of its police power, which would be valid, if not superseded by federal action, is superseded only where the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.... Deviations from this policy ... have been so rare all these decades, despite the changes in the Court, because of fidelity to the purposes of this vital aspect of our federalism” (internal quotations omitted)); Geier v. American Honda Motor Co., Inc., 166 F.3d 1236, 1237 (D.C.Cir.1999) (following Rice’s presumption against preemption). The presumptive validity of historic police powers, then, is not a peculiarity of due process case law, but a crucial doctrine underlying our entire federalist system of governance. Cf. Railroad Comm’n of Texas v. Pullman Co., 312 U.S. 496, 500-01, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (“Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies. [It is wise for federal courts to] restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary” (internal quotations omitted)); Brown v. Tidwell, 169 F.3d 330, 332 (6th Cir.1999) (same).
Second, the majority’s statement is premised upon the assumption — an unfathomable one, in my view — that federal courts should somehow be less concerned with potential constitutional deficiencies in local ordinances than possible violations of the Fair Housing Act. It is elementary to our judicial system that constitutional law is “the law of the land,” and that no legislation — federal, state, or local — will stand if it contradicts constitutional provisions. A corollary to this principle is that we should be hesitant to accord constitutional significance to our pronouncements, choosing instead to base our holdings on less significant statutory or even procedural grounds whenever plausible. Thus, we will presumptively interpret statutes in such a way as to avoid constitutional defects, see, e.g., Pak v. Reno, 196 F.3d 666, 673 (6th Cir.1999) (majority opinion by Cole, J., and joined by Jones, J.); Callier v. Gray, 167 F.3d 977, 982 (6th Cir.1999), and not reach the constitutional issues raised in a case unless they are necessary to the case’s proper resolution. See Spec-tor Motor Service v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944) (“If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality [ ... ] unless such adjudication is unavoidable”). And yet, as I discussed above, whenever we do choose to reach the questions of law with constitutional significance in a case involving a historic police power, we nonetheless- presume that exercise of power to be constitutionally valid. The idea that we should give that degree of deference to police power ordinances in constitutional arenas but not in the context *641 of statutory regimes such as the FHA is entirely unsupported by the majority’s bare observation that this is an- FHA case and Kutrom Corp. involved the Due Process Clause. Indeed, the idea is simply unsupportable.
II.
Beginning from these precedents, it seems plain to me that neither the FHA’s text, its legislative history, the Supreme Court’s City of Edmonds decision, nor any “general principles of statutory construction” mandate a departure from our standard practice of according police power ordinances a presumption of validity and placing the burden on the challenger to prove otherwise. The pertinent sentence of 42 U.S.C. § 3607(b)(1) reads: “Nothing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling.” As the majority has noted, the Court in City of Edmonds found it “[tjell-ing” that this provision was added simultaneously with the 1988 Amendments broadening the FHA’s scope to prohibit discrimination based on family status. “Section 3607(b)(1) makes it plain that, pursuant to local prescriptions on maximum occupancy, landlords legitimately may refuse to stuff large families into small quarters.” City of Edmonds, 514 U.S. at 735 n. 9, 115 S.Ct. 1776. Clearly this section was intended to prevent overzealous judicial application of the FHA’s broad, anti-discrimination policy from having the unintended consequence of invalidating legitimate anti-overcrowding ordinances. The Court did continue to read § 3607(b)(1)’s exemption narrowly in order to preserve the primary operation of the FHA’s policy, see id. at 731-32, 115 S.Ct. 1776, but it did this only in measuring the breadth of the exception, not its effect on laws falling within it. The Court repeatedly stressed that its holding was a narrow one limited to this question only. See id, at 728, 731, 738, 115 S.Ct. 1776. City of Edmonds decided that § 3607(b)(1) exempted only “numerical ceilings that serve to prevent overcrowding in living, quarters,” and not the type of ordinance at issue there, which defined what composed a family unit and applied different occupancy rules on that basis. Id. at 731, 115 S.Ct. 1776. The Court differentiated land-use restrictions that are necessarily based on value judgments from numerical occupancy limits that are neutral and evenly applied. See id. at 732-34, 115 S.Ct. 1776. These latter ordinances “plainly and unmistakably fall within § 3607(b)(l)’s absolute exemption from the FHA’s governance.” Id. at 735, 115 S.Ct. 1776 (internal quotations omitted, emphasis added). The section “entirely exempts [such ordinances] from the FHA’s compass.” Id. at 728, 115 S.Ct. 1776 (emphasis added).
The majority purports to follow City of Edmonds’s lead in construing the exemption narrowly to promote the FHA’s broader policy. In actuality, by narrowly construing both the breadth and effect of the exemption, the majority ignores both the legislative intent of § 3607(b)(1) to protect numerical occupancy limits and the Court’s express admonition that once an ordinance is determined to be such a neutral, numerical law — a fact the majority freely concedes here — it is no longer subject to the FHA’s anti-discrimination regime.
The majority also cites general principles of statutory construction and a string of cases for the generic proposition that a party claiming an exemption from a statute has the burden of proving its applicability. This is not an objectionable concept in the abstract. The Supreme Court itself said as much in City of Edmonds in a preface to its discussion of the family-defining ordinance at issue there. See 514 U.S. at 731-32, 115 S.Ct. 1776. But that decision and each case cited by the majority were concerned with the types of restrictions that would qualify for the exemption, not the scrutiny to be given after *642 deciding that the exemption in fact applies. The breadth of the exemption and its effect are wholly separate questions. City of Edmonds settled the question of § 3607(b)(l)’s breadth, and it is undisputed that the ordinances here fall within it. City of Edmonds therefore also commands that the FHA, exemption or not, is no longer relevant to the inquiry. To the extent that the authorities cited by the majority suggest otherwise, they are, in my opinion, mistaken. For the same reason, the majority’s emphasis on the fact that the FHA is a remedial statute is also irrelevant once we decide that the exemption applies.
I also find the majority’s reasoning undermined by its omission of several critical elements in the cases it cites for this proposition. Most glaringly, the majority blatantly misrepresents our holding in Graneare, Inc. v. National Labor Relations Board, 137 F.3d 372, 378 (6th Cir.1998). There, a nursing care facility asserted an exemption to the National Labor Relations Act that excluded “supervisors” from joining collective bargaining units with other employees. Consistent with our precedent, see NLRB v. Beacon Light Christian Nursing Home, 825 F.2d 1076, 1080 (6th Cir.1987), we held through Judge Surhein-rich that the NLRB bore the burden of proving that the employees were not supervisors, and that it had impermissibly shifted that burden to the employer. See Graneare, 137 F.3d at 375. Judge Moore filed an opinion concurring in the result but disagreeing with the placement of the burden on the Board, and it is a passage from that opinion — which is contrary to that case’s actual holding — that the majority now cites as the proposition Graneare stands for. See id. at 378. The majority’s citation to Judge Moore’s concurrence is made even more troubling by the fact that Judge Jones, the author of today’s majority opinion, solidified Graneare’s actual holding in a separate opinion “concurring] in [Judge Surheinrich]’s well-reasoned opinion.” Id. at 376. Judge Jones’s Gran-eare concurrence sympathized with Judge Moore’s concerns, but agreed that “we are clearly bound by Sixth Circuit precedent which places the burden on the Board to prove that employees are not supervisors.” Id. at 377.
Moreover, at least one case cited by the majority stands merely for the proposition that ambiguous terms will be construed according to the statute’s remedial purpose and against the party claiming the exemption. See Hogar Agua y Vida en el De-sierto, Inc. v. Suarez-Medina, 36 F.3d 177, 181, 186 (1st Cir.1994). City of Edmond’s holding that numerical occupancy limits such as those at issue here “plainly and unmistakably” qualify for the exception leaves little ambiguity to construe. Additionally, reliance on cases construing exemptions in federal laws governing private individuals does nothing to address whether the Cities’ ordinances retain their presumption of validity — and thus whether the burden remains on the challengers— under the FHA. See Graneare, 137 F.3d 372 (NLRA); Herman v. Palo Group Foster Home, 183 F.3d 468 (6th Cir.1999) (Fair Labor Standards Act); Jones v. FBI, 41 F.3d 238, 244 (6th Cir.1994) (Freedom of Information Act).
Most of the cases cited by the majority which place the burden on parties claiming an exemption involve private parties and not localities. By its own terms, however, § 3607(b)(1) applies only to “local, State, or Federal restrictions.” This is consistent with the accordance of a presumption of validity to police power-based ordinances. A number of courts, as well as HUD, have taken note of this distinction, and applied a much higher scrutiny to occupancy limits based on private rules rather than local ordinances. See, e.g., Pfaff v. United States Dept. of Housing and Urban Development, 88 F.3d 739, 746 (9th Cir.1996) (“this provision [lessens] the burden of the fair housing laws on government entities as compared to private landlords”) (citing H.R.Rep. No. 711, 100th Cong., 2d Sess., at 31 (1988), reprinted in *643 1988 U.S.S.C.A.N. 2178, 2192); id. at 748 (“the Department will carefully examine any such nongovernmental restriction” (quoting HUD’s original interpretation of the 1988 Amendments in Implementation of the Fair Housing Amendments Act of 1988, 54 Fed.Reg. 3282, 3237 (Jan. 23, 1989))); Brandt v. Village of Chebanse, Ill., 82 F.3d 172, 174 (7th Cir.1996) (same); United States v. Badgett, 976 F.2d 1176, 1179 (8th Cir.1992) (same); Doe v. City of Butler, Penn., 892 F.2d 315, 324 n. 5 (3d Cir.1989) (recognizing distinction by refusing to express opinion on whether HUD regulations are applicable to governmental as opposed to private occupancy limits); United States v. Tropic Seas, Inc., 887 F.Supp. 1347, 1361 (D. Hawai’i 1995) (applying stricter standard to private limits); United States v. Lepore, 816 F.Supp. 1011, 1021 (M.D.Pa.1991) (same). While the majority’s assignment of the burden of proof to the party claiming § 3607(b)(l)’s exemption may be appropriate when the restriction is privately initiated, it is inappropriate here.
Section 3607(b)(l)’s proviso limiting its exception to only “reasonable” restrictions is also consistent with a presumption of the ordinances’ validity. The presumption in favor of a police power-based ordinance has never been irrebuttable, and its constitutional validity has always hinged on the ordinance’s reasonableness:
The term ‘police power’ connotes the time-tested conceptional limit of public encroachment upon private interests. Except for the substitution of the familiar standard of ‘reasonableness,’ this Court has generally refrained from announcing any specific criteria. The classic statement of the rule in Lawton v. Steele, 152 U.S. 133, 137, 14 S.Ct. 499, 501, 38 L.Ed. 385 (1894), is still valid today:
‘To justify the state in * * * interposing its authority in behalf of the public, it must appear — First, that the interests of the public * * * require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals.’
Even this rule is not applied with strict precision, for this Court has often said that ‘debatable questions as to reasonableness are not for the courts but for the Legislature * * *.’ E.g., Sproles v. Binford, 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932).
& # Hi H* * ❖
Our past cases leave no doubt that appellants [challenging the ordinance] had the burden on ‘reasonableness.’
Goldblatt, 369 U.S. at 594-95, 596, 82 S.Ct. 987. This is the same test we applied in Kutrom Corp. See 979 F.2d at 1174 (“The Supreme Court has stated repeatedly that an ordinance or statute directed toward economic or social welfare regulation adopted in exercise of police powers is presumptively valid, and the burden on the issue of reasonableness lies with the party challenging such an enactment”). The Court in City of Edmonds suggested that the FHA’s reasonableness requirement is no more demanding than this lenient test. See 514 U.S. at 734 n. 8, 115 S.Ct. 1776 (quoting legislative history suggesting that a reasonable ordinance is one that is applied evenly and does not discriminate on a basis regulated by the FHA); id. at 737, 115 S.Ct. 1776 (“this contention ... exaggerates the force of the FHA’s antidis-crimination provisions. [W]hen applicable, [they] require only ‘reasonable’ accommodations”).
For these reasons, I read the City of Edmonds decision and the FHA’s text and legislative history as affirming the propriety of presuming local maximum occupancy restrictions based on police powers to be valid. At the very least, they remove the FHA’s anti-discrimination policy considerations from our .analysis, in which case the majority’s rationale for denying the traditional presumption of validity disappears. Applying this presumption ipso *644 facto requires us to place the burden of disproving the ordinances’ reasonableness on the challengers, for by definition a presumption is a rule of law creating “an inference in favor of a particular fact” until rebutted. Black’s Law Dictionary 822 (Abr. 6th ed.1991); see also Fed.R.Evid. 301.
III.
In summary, although I concur in the majority’s ultimate judgment that the ordinances at issue here were reasonable, I believe that the rationale it uses to reach that result severely undermines the respect we owe to states’ and localities’ use of their police powers. Requiring cities to prove their neutral, numerically based maximum occupancy restrictions to be reasonable flies in the face of the wealth of precedent according a presumption of reasonableness and constitutional validity to enactments based on these historically non-federal powers.